[No. 24917-4-III.   Division Three.   April 29, 2008.]

THE STATE OF WASHINGTON, *Respondent*, v. HECTOR M. PRADO, *Appellant*.

---

[8] Because we remand this matter to the trial court, we need not address the other issues raised on appeal by D.F.F.

*Lenell R. Nussbaum*, for appellant.

*Gary A. Riesen, Prosecuting Attorney*, and *Douglas J. Shae, Deputy*, for respondent.

¶1 STEPHENS, J.[*] — Hector M. Prado appeals his conviction for first degree assault. He raises several issues concerning the trial court's instructions to the jury. He also contends he was denied effective assistance of counsel and challenges the court's restitution. In his statement of additional grounds for review, Mr. Prado alleges prosecutorial misconduct. Finding no error, we affirm.

## FACTS

¶2 In the early morning of July 27, 2005, Belinda Dillard and her boyfriend, Daniel Guyer, were at Trav's Restaurant and Lounge in Wenatchee, Washington. While Ms. Dillard was sitting in the bar, she noticed Mr. Prado was trying to get her attention. Ms. Dillard turned to Mr. Prado and asked him his name and where he was from. Mr. Prado said that he was from Chicago and that he was in Wenatchee on business. Ms. Dillard introduced Mr. Prado to Mr. Guyer. Mr. Prado came over to the table and shook Mr. Guyer's hand and they continued talking. When Mr. Guyer left the table to use the restroom, Mr. Prado leaned over and kissed

---

[*] Justice Debra L. Stephens was a member of the Court of Appeals at the time oral argument was heard on this matter. She is now serving as a judge pro tempore of the court pursuant to RCW 2.06.150.

Ms. Dillard. Ms. Dillard then told Mr. Prado that she had to find Mr. Guyer, and Ms. Dillard and Mr. Guyer left the bar.

¶3 While Ms. Dillard and Mr. Guyer were walking to their car, Ms. Dillard told Mr. Guyer that Mr. Prado had kissed her. Mr. Guyer became angry. He got into the car and drove away, leaving Ms. Dillard. Ms. Dillard started to walk home. As she crossed the street, she heard a car honk, turned around, and saw Mr. Prado. Mr. Prado asked Ms. Dillard if she wanted a ride. When Ms. Dillard said "no thank you," Mr. Prado asked again if he could take her home. 3 Report of Proceedings (RP) (Jan. 9, 2006) at 342. Ms. Dillard again declined. At this point, Ms. Dillard saw Mr. Guyer driving through the alley.

¶4 Mr. Guyer pulled up to the front of Mr. Prado's car and got out. He went over to Mr. Prado's car and banged on the driver's-side window. Mr. Prado got out of the car and the two men began pushing each other. Ms. Dillard then noticed Mr. Prado's car rolling backwards. Because neither Mr. Prado nor Mr. Guyer noticed the car rolling, Ms. Dillard reached into the car and pushed the emergency brake. When she got out of the car, Mr. Prado came back to the car, got in, and drove away.

¶5 Ms. Dillard then noticed Mr. Guyer in the middle of the street, bleeding from his chest. Mr. Guyer also had two stab wounds in his side. Mr. Guyer was taken to the hospital, where he later died. An autopsy revealed that Mr. Guyer died as a result of a stab wound to the chest.

¶6 On July 29, 2005, Mr. Prado was charged with one count of second degree murder. The information was amended to charge Mr. Prado with one count of second degree murder and one count of first degree assault with a deadly weapon. The matter proceeded to a jury trial.

¶7 At trial, Mr. Prado testified that when Mr. Guyer went to the bathroom, Ms. Dillard put her arms around him and they kissed. He said Mr. Guyer came out of the bathroom and told Ms. Dillard that it was time to leave the bar. Mr. Prado said he went to the restroom and left the bar

a few minutes later. While he was stopped at a stoplight, Mr. Prado said he saw Ms. Dillard on the sidewalk. He said he rolled down his window and asked her if she needed a ride. He said that while he was talking to Ms. Dillard, Mr. Guyer pulled his car over right in front of him, got out of the car, and began banging on Mr. Prado's window. Mr. Prado said Mr. Guyer was banging on the window violently and that he was really scared. Mr. Prado said that he did not know what to do, so he pulled a knife out of the console of his car and got out of the car to intimidate Mr. Guyer.

¶8 Mr. Prado testified that he showed the knife to Mr. Guyer and told him to "calm down." 5 RP (Jan. 11, 2006) at 562. He said that a few seconds later, Mr. Guyer came toward him and they started to struggle. He said that he was afraid because Mr. Guyer was trying to take the knife out of his hand. Mr. Prado said that during the struggle, he remembered feeling the knife penetrate Mr. Guyer, but that it wasn't "too hard." 5 RP (Jan. 11, 2006) at 563. He said that he did not remember any other time when his knife stabbed Mr. Guyer during the struggle. He said that once he was able to escape Mr. Guyer's grasp, he ran toward his car and drove home. He said he took the knife and threw it in the garbage behind his house.

¶9 At the conclusion of the testimony, the court gave the following instructions to the jury:

> Instruction No. 22:
>
> It is lawful for a person who is in a place where that person has a right to be and who has reasonable grounds for believing that he is being attacked to stand his ground and defend against such attack by use of lawful force. The law does not impose a duty to retreat.

Clerk's Papers (CP) at 78.

> Instruction No. 23:
>
> A person commits the crime of assault in the first degree when, with intent to inflict great bodily harm, he or she assaults another with any deadly weapon.

CP at 79.

Instruction No. 24:

To convict the defendant of the crime of assault in the first degree as charged in count II of the information, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1)   That on or about the 27th day of July, 2005, the defendant assaulted Daniel Guyer;

(2)   That the assault was committed with a deadly weapon;

(3)   That the defendant acted with intent to inflict great bodily harm; and

(4)   That the acts occurred in the State of Washington.

If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

CP at 80.

Instruction No. 25:

An assault is an intentional touching, striking, or cutting of another person that is harmful or offensive. A touching, striking or cutting is offensive if the touching, striking or cutting would offend an ordinary person who is not unduly sensitive.

An assault is also an act, with unlawful force done with the intent to create in another apprehension and fear of bodily injury, and which in fact creates in another a reasonable apprehension and imminent fear of bodily injury even though the actor did not actually intend to inflict bodily injury.

CP at 81.

Instruction No. 29:

A person commits the crime of assault in the second degree when, under circumstances not amounting to assault in the first degree, he assaults another with a deadly weapon.

CP at 85.

Instruction No. 30:

To convict the defendant of the crime of assault in the second degree, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That on or about the 27th day of July, 2005, the defendant:

    (a)   intentionally assaulted Daniel Guyer and thereby recklessly inflicted substantial bodily harm; or

    (b)   assaulted Daniel Guyer with a deadly weapon; and

(2) That the acts occurred in the State of Washington . . . .

If you find from the evidence that element (2) and either element (1)(a) or (1)(b) have been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty. Elements (1)(a) and (1)(b) are alternatives and only one need be proved.

On the other hand, if after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

CP at 86.

Instruction No. 32:

A person commits the crime of assault in the third degree when, under circumstances not amounting to assault in either the first or second degree, he, with criminal negligence, causes bodily harm to another person by means of a weapon or other instrument or thing likely to produce bodily harm.

CP at 88.

Instruction No. 33:

To convict the defendant of the crime of assault in the third degree, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That on or about the 27th day of July, 2005, the defendant caused bodily harm to Daniel Guyer[;]

(2) That the physical injury was caused by a weapon or other instrument or thing likely to produce bodily harm;

(3) That the defendant acted with criminal negligence; and

(4) That the acts occurred in the State of Washington.

If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

CP at 89.

Instruction No. 35:

It is a defense to a charge of assault in the first degree as well as the lesser included offense of assault in the second and third degree that the force used was lawful as defined in this instruction.

The use of force upon or toward the person of another is lawful when used by a person who reasonably believes that he is about to be injured in preventing or attempting to prevent an offense against the person or a malicious trespass or other malicious interference with real or personal property lawfully in that person's possession, and when the force is not more than is necessary.

The person using the force may employ such force and means as a reasonably prudent person would use under the same or similar conditions as they appeared to the person, taking into consideration all of the facts and circumstances known to the person at the time of and prior to the incident.

The State has the burden of proving beyond a reasonable doubt that the force used by the defendant was not lawful. If you find the State has not proved the absence of this defense beyond a reasonable doubt, it will be your duty to return a verdict of not guilty.

CP at 91. The jury found Mr. Prado not guilty of second degree murder but guilty of first degree assault. The jury also returned a special verdict determining that Mr. Prado was armed with a deadly weapon.

¶10 On January 23, 2006, the court sentenced Mr. Prado to 93 months plus 24 months for the deadly weapon enhancement for a total of 117 months' incarceration. A restitution hearing was scheduled for March 20.

¶11 At the restitution hearing, the court indicated that it would order restitution in the amount of $5,802.92 to reimburse the Crime Victim's Compensation Fund and $2,576.00 for Mr. Guyer's headstone and cemetery plot. Mr. Guyer's mother also requested restitution to cover her travel and lodging expenses for the trial, as well as restitution to cover child support for Mr. Guyer's child and to pay his bank loans. The court stated that it was unsure whether it could order restitution for such expenses and indicated that a letter would follow with the court's decision.

¶12 On March 24, 2006, the court issued its letter decision on restitution. The court ordered restitution to be paid by Mr. Prado in the amount of $5,802.92 to the Crime Victim's Compensation Fund. The court, however, denied restitution to cover the costs of Mr. Guyer's headstone, cemetery plot, child support, bank loans, and Mr. Guyer's mother's trial travel expenses.

¶13 On May 15, the court held a second restitution hearing. The State informed the court that it had just presented defense counsel with a recently decided case in reference to the court's denial of restitution for Mr. Guyer's headstone and cemetery plot. The State also requested an additional restitution amount of $2,825.29 for Mr. Guyer's emergency room medical expenses. Defense counsel then requested to continue the hearing. The hearing was continued to June 14.

¶14 On June 14, the court heard argument from counsel on the State's motion for payment of additional medical expenses and the State's motion for reconsideration regarding restitution for Mr. Guyer's headstone and cemetery plot. The court granted the State's motion for reconsideration and ordered restitution in the amount of $5,802.92 to the Crime Victim's Compensation Fund, $2,825.29 for Mr. Guyer's medical costs, $1,500.00 for a headstone, and $1,076.00 for the cemetery plot. A restitution order was entered that day. This appeal follows.

## ANALYSIS

### A. Jury Instructions

¶15 Mr. Prado alleges several instances of instructional error. We review claims of erroneous jury instructions de novo. *State v. Mills*, 154 Wn.2d 1, 7, 109 P.3d 415 (2005).

¶16 Mr. Prado first complains about the sequence in which the trial judge gave the instructions to the jury. He argues that instruction 22, the "no duty to retreat" instruction, was placed at the end of the instructions for second degree murder and the lesser-included offenses of first and second degree manslaughter, but was not repeated after the instructions for first degree assault and its lesser included offenses. Mr. Prado therefore argues that he was deprived of the instruction as it pertained to the first degree assault charge.

¶17 Although it appears that there is no authority directly on this question, the governing principle is that jury instructions will satisfy the demands of a fair trial if, when read as a whole, they correctly tell the jury of the applicable law, are not misleading, and permit the defendant to present his theory of the case. *Id.* The court views the instructions in their entirety and will not parse out a single instruction to examine it in isolation. *In re Pers. Restraint of Benn*, 134 Wn.2d 868, 922, 952 P.2d 116 (1998). The phrase "read as a whole" does not suggest that the judge must read the instructions in any particular order. *Id.*

¶18 Here, the court instructed the jury, pursuant to 11 *Washington Practice, Washington Pattern Jury Instructions: Criminal* 1.02, at 9 (1994) (WPIC):

> The order in which these instructions are given has no significance as to their relative importance. The attorneys may properly discuss any specific instructions they think are particularly significant. You should consider the instructions as a whole and should not place undue emphasis on any particular instruction or part thereof.

CP at 118. Juries are presumed to follow the court's instructions. *State v. Johnson*, 124 Wn.2d 57, 77, 873 P.2d 514 (1994). The instructions accurately stated applicable law identifying that Mr. Prado had no duty to retreat and were not misleading. Moreover, nothing in the placement of instruction 22 prevented Mr. Prado from arguing his theory of the case that he acted in self-defense. We find no error.

¶19 Mr. Prado next contends the court erred by failing to give his proposed instructions to the jury on reckless endangerment and the unlawful display of a weapon. He contends that these instructions should have been given to the jury because they are lesser-included offenses to first degree assault.

¶20 A trial court's refusal to submit a proposed jury instruction is reviewed for an abuse of discretion. *State v. Picard*, 90 Wn. App. 890, 902, 954 P.2d 336, *review denied*, 136 Wn.2d 1021 (1998). The jury must be fully instructed on the law, but there is no right to an instruction that is not supported by the evidence. *State v. Staley*, 123 Wn.2d 794, 803, 872 P.2d 502 (1994). A defendant may be convicted of a lesser included offense even if the State did not charge the lesser included offense. RCW 10.61.006; *State v. Fernandez-Medina*, 141 Wn.2d 448, 453, 6 P.3d 1150 (2000). But a defendant is entitled to an instruction on a lesser included offense only if (1) each of the elements of the lesser offense is a necessary element of the offense charged and (2) the evidence in the case supports an inference that the defendant committed the lesser crime. *State v. Workman*, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978); *see State v. Berlin*, 133 Wn.2d 541, 547-49, 947 P.2d 700 (1997) (overruling *State v. Lucky*, 128 Wn.2d 727, 912 P.2d 483 (1996)). These requirements are respectively known as the "legal" and "factual" prongs of the lesser included offense test. *State v. Walden*, 67 Wn. App. 891, 893, 841 P.2d 81 (1992).

¶21 Under the legal prong, a defendant is entitled to an instruction on the lesser offense only if the charged crime could not be committed without also committing the lesser

offense. *Id.* "To satisfy the factual prong of *Workman*, the evidence must support an inference that the lesser offense was committed *instead* of the greater offense." *State v. Karp*, 69 Wn. App. 369, 376, 848 P.2d 1304, *review denied*, 122 Wn.2d 1005 (1993). In other words, "the record must support an inference that *only* the lesser offense was committed." *Id.*

¶22 Mr. Prado first argues that he was entitled to an instruction on reckless endangerment. In order to determine if assault and reckless endangerment are identical in law, this court must decide whether Mr. Prado also committed the crime of reckless endangerment when committing the crime of first degree assault.

¶23 First degree assault occurs when a person, with intent to inflict great bodily harm, assaults another with a firearm or any deadly weapon likely to produce great bodily harm or death. RCW 9A.36.011(1)(a). Putting the victim in fear of harm is a type of assault. *State v. Wilson*, 125 Wn.2d 212, 218, 883 P.2d 320 (1994). Reckless endangerment occurs when a person recklessly engages in conduct that creates a substantial risk of death or serious physical injury to another. RCW 9A.36.050(1). First degree assault requires intent, while reckless endangerment requires recklessness. These offenses do not have identical elements. Because a person who commits reckless endangerment does not also commit all of the acts necessary for commission of first degree assault, each element of the crime of reckless endangerment is not a necessary element of the offense of first degree assault. Mr. Prado could commit one crime without committing the other, so the legal prong of the lesser included test was not met. The court did not err by refusing to give a reckless endangerment instruction.

¶24 Mr. Prado next argues that the court erred by failing to give a jury instruction on the unlawful display of a weapon as a lesser included offense to first degree assault. RCW 9.41.270(1) provides that "[i]t shall be unlawful for any person to carry, exhibit, display or draw any . . . knife or other cutting or stabbing instrument . . . in a

manner, under circumstances, and at a time and place that either manifests an intent to intimidate another or that warrants alarm for the safety of other persons." Under RCW 9A.36.011, a person is guilty of first degree assault if he "[a]ssaults another with . . . any deadly weapon." Our courts have generally defined "assault" as an attempt, with unlawful force, to inflict bodily injury upon another, or to cause apprehension of such injury, accompanied with the apparent present ability to give effect to the attempt if not prevented. *See State v. Stewart*, 73 Wn.2d 701, 703, 440 P.2d 815 (1968); *State v. Byrd*, 125 Wn.2d 707, 713, 887 P.2d 396 (1995). Because a person who displays a knife in the manner described also commits all of the acts necessary for commission of first degree assault, each element of the lesser-included offense of unlawful display of a weapon is a necessary element of the offense of first degree assault. RCW 9.41.270(1); RCW 9A.36.011; *see State v. Baggett*, 103 Wn. App. 564, 569, 13 P.3d 659 (2000), *review denied*, 143 Wn.2d 1011 (2001); *Karp*, 69 Wn. App. at 375. Mr. Prado could not commit one crime without committing the other, so the legal prong of the *Workman* test was met. *Baggett*, 103 Wn. App. at 569.

¶25 In order to satisfy *Workman*'s factual prong, the evidence must support an inference that Mr. Prado committed *only* the crime of unlawful display. *Fernandez-Medina*, 141 Wn.2d at 455.

¶26 Here, the record does not support an inference that Mr. Prado violated only the unlawful display statute. The evidence established that Mr. Prado got the knife out of his car's console while Mr. Guyer was banging on his window. Mr. Prado then stepped out of the car with the knife "to intimidate" Mr. Guyer because he did not want Mr. Guyer to approach him or his vehicle. He testified that he felt more secure outside of his car with the knife than being inside of the car. Mr. Prado displayed the knife to Mr. Guyer and told him to "calm down." 5 RP (Jan. 11, 2006) at 562. When Mr. Prado and Mr. Guyer began to struggle, Mr. Prado said it was his intention "to touch him with the knife so that he

would – would draw away from me." 5 RP (Jan. 11, 2006) at 585. This evidence supports an inference that an assault was committed because Mr. Prado engaged in an intentional act to place Mr. Guyer in apprehension of harm. While Mr. Prado's conduct also supports an inference that he violated the unlawful display statute, the evidence does not support an inference that *only* that statute was violated. Mr. Prado thus was not entitled to the lesser included offense instruction.

¶27 Mr. Prado contends that the court erred by giving instruction 35 to the jury.[1] Relying on *State v. Bland*, 128 Wn. App. 511, 116 P.3d 428 (2005), he first argues that this instruction was defective.

¶28 In *Bland*, 128 Wn. App. at 513, the defendant was charged with second degree assault after he chased a guest around his house and into a bedroom with a gun. The jury was instructed on the law of defense of property as follows:

> The use or attempt to use force upon or toward the person of another is lawful when used or attempted by a person who reasonably believes that he is about to be injured in preventing or attempting to prevent an offense against the person or a malicious trespass or other malicious interference with real or personal property lawfully in that person's possession, and when the force is not more than is necessary.

*Id*. at 514. The jury convicted the defendant as charged. *Id*. at 513.

¶29 On appeal, the defendant argued, among other things, that the jury was improperly instructed on the law of the defense of property. *Id*. The court found error in the instruction, because the conjunction "or" should have been inserted between the word "injured" and the phrase "in preventing." The court found that without the conjunction, the instruction "could be understood to require a finding that a defendant reasonably believed that *he* was about to

---

[1] Mr. Prado proposed a similar instruction at trial, omitting the paragraph concerning malicious trespass and malicious interference with real or personal property. He objected to the court's refusal to use this instruction.

be injured in preventing a malicious trespass." *Id.* at 514 (emphasis added). Because such belief is not a requirement for defense of property, the court held that the instruction confused the distinction between self-defense and defense of property and was reversible error. *Id.*

¶30 Here, instruction 35 contained the same paragraph at issue in *Bland* and also omitted the necessary conjunctive "or" deemed problematic in *Bland.* However, unlike in *Bland,* the language used did not offset Mr. Prado's self-defense claim. There was not sufficient evidence presented at Mr. Prado's trial to establish any defense of property claim. The opening statement and closing argument of Mr. Prado's defense counsel made no mention of a defense of property claim. Mr. Prado's testimony was about self-defense, not defense of his car or other property. Moreover, in nonhomicide cases, a defendant cannot use more force than necessary in self-defense. "[I]t can never be reasonable to use a deadly weapon in a deadly manner unless the person attacked had reasonable grounds to fear death or great bodily harm." *State v. Ferguson,* 131 Wn. App. 855, 862, 129 P.3d 856, *review denied,* 158 Wn.2d 1016 (2006). Thus, we find no reversible error in the use of instruction 35 in this case.

¶31 Mr. Prado next appears to contend that instructions 23, 24, 25, 29, 30, 32, and 33 on assault were erroneous because they omitted either any reference to self-defense or to the requirement of unlawful force. He argues that because the court's instructions defining second degree murder and first and second degree manslaughter included a statement concerning the defense of accident, the court was also required to include defenses in the assault instructions.

¶32 Due process requires that a criminal defendant be convicted only where every element of the charged crime is proved beyond a reasonable doubt. U.S. Const. amend. XIV; Wash. Const. art. I, § 22; *Jackson v. Virginia,* 443 U.S. 307, 311, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *In re Winship,* 397 U.S. 358, 365-66, 90 S. Ct. 1068, 25 L.

Ed. 2d 368 (1970). Therefore, "to convict" instructions must contain all the elements of the crime, lest the State be relieved of its burden to prove every essential element beyond a reasonable doubt. *State v. Smith*, 131 Wn.2d 258, 265, 930 P.2d 917 (1997).

¶33 Here, instructions 23, 24, 29, 30, 32, and 33 were consistent with the pattern jury instructions on assault and were accurate statements of the law. WPIC 35.01, at 367 (2d ed. 1994); WPIC 35.01, at 198 (Supp. 2005); WPIC 35.02, at 199 (Supp. 2005); WPIC 35.10, at 379 (2d ed. 1994); WPIC 35.10, at 211 (Supp. 2005); WPIC 35.12, at 384 (2d ed. 1994); WPIC 35.12, at 215 (Supp. 2005); WPIC 35.20, at 400 (2d ed. 1994); WPIC 35.20, at 230-31 (Supp. 2005); WPIC 35.22, at 405 (2d ed. 1994); WPIC 35.22, at 235 (Supp. 2005); RCW 9A.36.011(1)(a); RCW 9A.36.021; RCW 9A.36.031.

¶34 Instruction 25, the general definitional instruction for "assault," however, omitted the phrase "with unlawful force" from the first paragraph defining "assault." This instruction was derived from WPIC 35.50 and is consistent with the earlier version of the pattern instruction that did not include the phrase "with unlawful force" in connection with assault by actual harmful physical contact, but included "with unlawful force" in connection with the other two means of assault, attempted battery, and creation of apprehension and fear. WPIC 35.50, at 453 (2d ed. 1994). This is no longer consistent with the pattern instructions. WPIC 35.50, at 291-92 (Supp. 2005). The most recent version of the instruction now includes the bracketed phrase "with unlawful force" in connection with all three means of assault. *Id.* The comments to this instruction recommend using the phrase "with unlawful force," as case law now defines "assault" to include the requirement that it be committed with unlawful force. *State v. Hupe*, 50 Wn. App. 277, 748 P.2d 263, *review denied*, 110 Wn.2d 1019 (1988), *overruled on other grounds by State v. Smith*, 159 Wn.2d 778, 154 P.3d 873 (2007). The comments, however, caution against using the phrase "unlawful force" without

defining it or absent evidence of self-defense or other lawful force. WPIC 35.50, at 294 (Supp. 2005).

¶35 This was a self-defense case and instruction 25 contained an incomplete definition of "assault" because the first paragraph defining "assault" omitted the phrase "with unlawful force" as recommended by the current pattern instructions and case law. However, instruction 35, the court's self-defense instruction, correctly defined the "lawful" use of force as it pertained to first, second, and third degree assault and also informed the jury of the State's burden of proving Mr. Prado's use of force "was not lawful." Thus, the self-defense standard was made "manifestly apparent" to the average juror. *State v. Walden*, 131 Wn.2d 469, 473, 932 P.2d 1237 (1997); *State v. Allery*, 101 Wn.2d 591, 595, 682 P.2d 312 (1984). The constitutional standard was met, and we find no reversible error.

¶36 Mr. Prado next contends the court erred by failing to give his proposed instruction E on self-defense. He argues that without this instruction, the jury was unable to evaluate his claim of self-defense based on his subjective perception of the events. Mr. Prado proposed the following instruction:

> A person is entitled to act on appearances in defending himself, if that person believes in good faith and on reasonable grounds that he is in actual danger of great bodily injury, although it afterwards might develop that the person was mistaken as to the extent of the danger.
>
> Actual danger is not necessary for homicide to be justifiable.

CP at 106.

¶37 Courts must inform the jury that the self-defense standard incorporates both objective and subjective elements: the subjective portion requires the jury to stand in the defendant's shoes and consider all the facts and circumstances known to the defendant, while the objective portion requires the jury to determine what a reasonably prudent person similarly situated would do. *Walden*, 131 Wn.2d at 474. A jury instruction that misstates self-defense

law is an error of constitutional magnitude and is presumed prejudicial. *Id.* at 473.

¶38 Here, instruction 35 was consistent with the pattern instruction on self-defense. WPIC 17.02, at 196 (2d ed. 1994). WPIC 17.02 was previously redrafted to take into account the subjective factors required by our Supreme Court in *Allery*, 101 Wn.2d at 595. WPIC 17.02 cmt. (2d ed. 1994). WPIC 17.02 and instruction 35 both contain almost the same language required by *Allery* and correctly state the subjective standard pertaining to self-defense. Thus, it was not error for the court to refuse Mr. Prado's proposed self-defense instruction.

B. Ineffective Assistance of Counsel

¶39 Mr. Prado contends he was denied effective assistance of counsel. He argues instruction 35 was defective and that defense counsel should have been aware of the decision in *Bland*, 128 Wn. App. at 516-17, which found the instruction prejudicial on the issue of defense of property.

¶40 To establish ineffective assistance of counsel, Mr. Prado must show his attorney's performance was deficient and that he was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Hendrickson*, 129 Wn.2d 61, 77-78, 917 P.2d 563 (1996). The first element requires a showing that counsel's performance was deficient. *Hendrickson*, 129 Wn.2d at 77. The second element requires a showing based on reasonable probability that, but for counsel's deficient performance, the result would have been different. *State v. Thomas*, 109 Wn.2d 222, 226, 743 P.2d 816 (1987). If either element of the test is not satisfied, the inquiry ends. *Hendrickson*, 129 Wn.2d at 78.

¶41 There is a strong presumption counsel's performance was reasonable. *Thomas*, 109 Wn.2d at 226. When counsel's conduct can be characterized as legitimate trial strategy or tactics, it cannot serve as the basis for a claim of ineffective assistance. *Hendrickson*, 129 Wn.2d at 77-78.

¶42 Here, the first part of the *Strickland* test ends the inquiry, because the facts do not support Mr. Prado's claim of deficiency. As discussed above, the instruction at issue in *Bland* was found erroneous as it applied to a defense of property claim. Mr. Prado's self-defense claim was based solely on defense of his person, not defense of property. Accordingly, Mr. Prado's counsel's performance at trial was not deficient.

C. Restitution Order

¶43 Mr. Prado contends the trial court's restitution order is void. We review a challenge to a restitution order for abuse of discretion. *State v. Fleming*, 75 Wn. App. 270, 274, 877 P.2d 243 (1994). "An abuse of discretion occurs when the court's decision is 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.' " *State v. Wilson*, 100 Wn. App. 44, 47, 995 P.2d 1260 (2000) (internal quotation marks omitted) (quoting *State v. Enstone*, 137 Wn.2d 675, 679-80, 974 P.2d 828 (1999)).

¶44 The court's authority to enter restitution is statutory. RCW 9.94A.753(1); *State v. Davison*, 116 Wn.2d 917, 919, 809 P.2d 1374 (1991). When restitution is ordered, the court shall determine the amount due at the sentencing hearing or within 180 days, subject to certain exceptions not pertinent here. RCW 9.94A.753(1). The time limit is mandatory, although the court may continue the restitution hearing beyond the 180-day limit for good cause. *Id.*; *State v. Johnson*, 96 Wn. App. 813, 816, 981 P.2d 25 (1999). A motion for continuance must be made before the time limit has expired. *Johnson*, 96 Wn. App. at 816-17.

¶45 Mr. Prado first argues the State's motion for reconsideration on the amount of restitution was untimely. He asserts the restitution hearing was conducted on March 20, 2006. The court entered its decision on March 24, but the State did not seek reconsideration until June 14.

¶46 Mr. Prado was sentenced on January 23, 2006. The court issued its letter decision on the amount of restitution on March 24, but no order was entered on that

decision, as the court took certain issues under advisement. On May 15, the State sought reconsideration of the court's letter decision, based on recently decided case law. No restitution order was ever entered until after the matter came before the trial judge on the continued restitution hearing and motion for reconsideration. Because 180 days had not elapsed between the time of Mr. Prado's sentencing and the entering of the restitution order, and because no restitution order had been entered in the matter until after the State's motion, the State's request that the court reconsider its decision was not untimely. Moreover, under RCW 9.94A.753(4), "[t]he portion of the sentence concerning restitution may be modified as to amount, terms, and conditions during any period of time the offender remains under the court's jurisdiction, regardless of the expiration of the offender's term of community supervision and regardless of the statutory maximum sentence for the crime." At the time of the June 14 restitution hearing, Mr. Prado was still under the court's jurisdiction. RCW 9.94A.753(4) permitted the trial court to modify the amount of restitution, regardless of the State's motion for reconsideration.

¶47 Mr. Prado next contends that the State's motion for reconsideration failed to comply with CrR 7.8(c)(1), because the State did not file a written motion or written affidavit in support of its motion. He argues that the State's failure to do so voids the restitution order.

¶48 CrR 7.8(c)(1) states that in order to vacate a judgment, "[a]pplication shall be made by motion stating the grounds upon which relief is asked, and supported by affidavits setting forth a concise statement of the facts or errors upon which the motion is based." But here, there was no order to vacate via a motion for reconsideration. Any such motion by the State was premature. Therefore, the requirements of CrR 7.8(c)(1) did not apply. In any event, even if the State was required to file a written motion accompanied by affidavits, it is not apparent in the record whether the State did or did not file such documents. The only reference in the record to this motion can be found in

the clerk's minutes on the restitution hearing, and it does not indicate whether any written motion was filed with the court. To the extent that Mr. Prado relies on matters outside of the record, the issue may be properly raised in a personal restraint petition. *State v. McFarland*, 127 Wn.2d 322, 338, 899 P.2d 1251 (1995).

### D. Statement of Additional Grounds for Review

¶49 Mr. Prado first contends the prosecutor committed misconduct. He challenges the following passages from the closing arguments:

> The safest place to be that evening was inside of that car. Nothing happened to that window. There was nothing that took place that broke the window.

6 RP (Jan. 12, 2006) at 641.

> Takes the blade out and he says – his statement is to intimidate him. I got out of the car because I wanted to intimidate him. I got – I wanted him out of the proximity. I wanted to intimidate him. Did he have any weapons? I saw no weapons. Did he have anything in his hand? I saw nothing in his hand.
>
> Mr. Prado is now the aggressor in this situation. Mr. Prado is the person who's got the knife and he points it up at him and he says at one point in his direct testimony, I believe, I just wanted to touch him with the knife. I just wanted to touch him with it. I wanted to get him out. I wanted to intimidate him. Was it an accident? Yes, unfortunately, I believe he says. It's not self-defense. It's not self-defense if it's an accident.

6 RP (Jan. 12, 2006) at 642.

> And I would hope that you would ask yourself, should a person be able to go out with their girlfriend or friend, have a few drinks, hopefully not drink too much, be able to drive away without being – and she can walk home – and everybody doesn't get along all the time – without something like this happening. In America for 200 years, we've been a nation of laws. We're not a nation of men. If we become a nation of men, then what we become are people that can do whatever they want whenever they want. Here we're a nation of laws. We're

governed by the laws. There's an instruction that talks about that. We are a people that are governed by laws.

6 RP (Jan. 12, 2006) at 655-56.

¶50 A prosecutor has wide latitude in arguing facts in evidence and drawing reasonable inferences from them during closing arguments. *See State v. Smith*, 104 Wn.2d 497, 510, 707 P.2d 1306 (1985). Otherwise improper remarks are not grounds for reversal when they are invited, provoked, or occasioned by defense counsel and when the comments are in response to counsel's acts or statements, unless they go beyond the scope of an appropriate response. *State v. Davenport*, 100 Wn.2d 757, 761, 675 P.2d 1213 (1984) (citing *State v. La Porte*, 58 Wn.2d 816, 822, 365 P.2d 24 (1961)). The defense has the burden of proving that the prosecutor's conduct was improper and prejudicial, and that "there is a substantial likelihood the misconduct affected the jury's verdict." *State v. Finch*, 137 Wn.2d 792, 839, 975 P.2d 967, *cert. denied*, 528 U.S. 922 (1999).

¶51 Mr. Prado first contends that because this was a close case on the issue of self-defense, the prosecutor committed misconduct by stating that Mr. Prado was the "aggressor" when he got out of his car. But the testimony at trial established that Mr. Prado was the only person armed with a weapon. Mr. Prado testified that it was his intention to touch Mr. Guyer with the knife to intimidate him. The prosecutor's statements merely argued a reasonable inference from the evidence. Moreover, the court instructed the jury that the attorney's remarks, statements, and arguments are not evidence. Juries are presumed to follow the court's instructions. *Johnson*, 124 Wn.2d at 77.

¶52 Second, Mr. Prado contends the prosecutor committed misconduct when he made statements invoking "nationalistic emotions." Mr. Prado argues that these statements were an attempt to separate the prosecutor and jury from Mr. Prado, who was a foreigner and did not speak the English language. Mr. Prado relies on *State v. Perez-Mejia*, 134 Wn. App. 907, 143 P.3d 838 (2006) in support of his argument.

¶53 A prosecutor's closing argument should be free of appeals to passion and prejudice, and be confined to the evidence. *State v. Belgarde*, 110 Wn.2d 504, 507, 755 P.2d 174 (1988). "Accordingly, a prosecutor engages in misconduct when making an argument that appeals to jurors' fears and repudiation of criminal groups or invokes racial, ethnic, or religious prejudice as a reason to convict." *Perez-Mejia*, 134 Wn. App. at 916 (citing *Belgarde*, 110 Wn.2d 504).

¶54 In *Perez-Mejia*, 134 Wn. App. at 909, the defendant was convicted of one count of first degree murder. On appeal, he argued that the prosecutor committed misconduct during closing arguments when the prosecutor stated, among other things, that the jury should

> [s]end a message to Scorpion, to other members of his gang . . . and to all the other people who choose to dwell in the underworld of gangs. That message is we had enough. We will not tolerate it any longer. That we as citizens of the State of Washington and the United States of America, we have the right to life, liberty and the pursuit of happiness and we will no longer allow those who choose to dwell in the underworld of gangs to stifle our rights. And that message begins now.
>
> It begins now by finding that the defendant was involved in the death of Ms. Emmitt. That message can be sent by holding the defendant responsible for his actions, for his involvement in the gang. For him being an accomplice to his other gang members in the death of Ms. Margaret Emmitt.

*Id.* at 917 (second alteration in original) (footnote omitted).

¶55 In reversing the defendant's conviction, the court found that the prosecutor's argument improperly invoked the juror's patriotic sentiments and cast the defendant "as an oppressor of the inalienable rights listed in our nation's Declaration of Independence." *Id.* at 918. The court stated that the prosecutor's statement constituted an appeal to prejudice and patriotism and that it "needlessly injected the sensitive issues of nationality and ethnicity into a case where the defendant and his associates were alleged members of a Central American gang, many of whom, including

[the defendant], required Spanish language interpreters during the trial." *Id.*

¶56 *Perez-Mejia*, however, is distinguishable. Here, the prosecutor's statements concerning a "nation of laws" were not in reference to either Mr. Prado's nationality or ethnicity. They were statements meant to relay to the jury respect for the rule of law. This was not a plea to the juror's patriotic sentiments, as was the case in *Perez-Meija*. The prosecutor did not commit misconduct.

## CONCLUSION

¶57 We affirm the conviction of Mr. Prado for one count of first degree assault.

KULIK, A.C.J., and BROWN, J., concur.