# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 75619-2-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| JOSEPH LOCHUCH EWALAN | ) | |
| | ) | |
| Appellant. | ) | FILED: April 30, 2018 |
| | ) | |

APPELWICK, C.J. — Ewalan was convicted of first degree assault domestic violence while armed with a firearm. He argues that the trial court abused its discretion in denying his motions for new counsel, erred in declining to instruct the jury on a lesser included offense, and abused its discretion in admitting evidence under ER 404(b). He also contends that he received ineffective assistance of counsel. We affirm.

## FACTS

Joseph Ewalan and Maureen Mwaniki married in Kenya in 2010. During that time Ewalan worked as a police officer. They immigrated to the United States in 2011. Once here, Ewalan first worked as a security guard. Ewalan and Mwaniki had two children together. At the time of trial, their children were five and three years old.

In 2015, Ewalan and Mwaniki began having problems in their marriage. Mwaniki testified that Ewalan threatened her, and she reported him to police several times. Mwaniki moved out of their home and filed for a dissolution of the marriage. By court order, Ewalan had the children every other weekend and on Thursday afternoons. The court order stated that Ewalan and Mwaniki would meet at McDonald's in Lake Stevens to exchange their children. The order also dictated that Ewalan and Mwaniki were to communicate only by text or e-mail.

On the evening of November 12, 2015, Mwaniki went to the usual McDonald's to pick up the children from a Thursday afternoon with Ewalan. Mwaniki testified that Ewalan approached her in the parking lot, yelling at her in Swahili. She testified that Ewalan then pulled out his gun and pointed it at her head. Mwaniki testified that she pushed Ewalan's shoulder and he shot the gun. Mwaniki did not see where the bullet went. Mwaniki then ran with her children into the McDonald's, yelling for help. Inside McDonald's, someone handed Mwaniki a phone to tell a 911 operator what happened.

Ewalan was charged with first degree assault domestic violence while armed with a firearm. Ewalan filed a motion for new counsel nearly seven months before trial commenced. About his attorney, Ewalan told the court, "I don't trust her anymore" and "it looks like she is working with the State." The court denied Ewalan's motion. Less than a month after his first motion, Ewalan again moved for new counsel. In his motion, Ewalan told the court that his counsel was "torn

between the State and client she is supposed to represent." The trial court denied the motion.

The jury found Ewalan guilty. The court imposed a standard range sentence. Ewalan appeals.

## DISCUSSION

Ewalan makes four arguments. First, he argues that the court erred in denying his motions for substitution of counsel. Second, he argues that defense counsel provided ineffective assistance by failing to investigate and retain an independent firearms expert. Third, he argues that the trial court erred in declining his proposed jury instruction on the lesser included offense of unlawful display of a weapon. Fourth, he argues that the trial court abused its discretion in admitting prejudicial evidence under ER 404(b).

Ewalan makes two additional claims of ineffective assistance of counsel in a statement of additional grounds for review (SAG).

I.   Motions for New Counsel

Ewalan first argues that the trial court erred in denying his two motions for new counsel. He contends that the trial court's failure to address the extent of the attorney-client conflict is a structural error that requires this court to reverse his conviction.

The essential aim of the Sixth Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers. In re Pers. Restraint of

Stenson, 142 Wn.2d 710, 725-26, 16 P.3d 1 (2001). To justify appointment of new counsel, a defendant must show good cause to warrant substitution of counsel, such as a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant. State v. Varga, 151 Wn.2d 179, 200, 86 P.3d 139 (2004). Generally, a defendant's loss of confidence or trust in his counsel is not sufficient reason to appoint new counsel. Id. On appeal, we review a trial court's decision to deny new court appointed counsel for abuse of discretion. Id.

In Stenson, the Washington Supreme Court adopted the Ninth Circuit Court of Appeals test to determine whether an irreconcilable conflict exists justifying the substitution of counsel. 142 Wn.2d at 723-24. The factors in the test are (1) the extent of the conflict, (2) the adequacy of the inquiry, and (3) the timeliness of the motion. Id. at 724. An irreconcilable conflict occurs when the breakdown of the relationship results in the complete denial of counsel. Id. at 722.

Ewalan contends that the trial court failed to adequately inquire into his alleged conflict with counsel or the breakdown in their communication. He complains that, in response to his first motion, the court stated its familiarity with his attorney, noted that she was a " 'worthy advocate,' " and failed to inquire further. Ewalan further complains that, in response to his second motion, the court abruptly denied the motion without argument and did not permit him to explain his reasons for the motion.

4

A trial court conducts adequate inquiry by allowing the defendant and counsel to express their concerns fully, and formal inquiry is not always essential where the defendant otherwise states his reasons for dissatisfaction on the record. State v. Schaller, 143 Wn. App. 258, 271, 177 P.3d 1139 (2007). Here, in a proceeding on January 28, 2016, the court invited Ewalan to state his reasons for moving for new counsel.

Ewalan told the judge that he was not content with the way counsel was handling his case. He recounted how, when he was first booked, his attorney told him that his release depended on whether he had a verified address, a criminal history, and the nature of his case. He then complained that counsel had not filed his health records, although he stated that she moved three times for his medical release. He also described in length his health concerns at the jail. He was dissatisfied with how his attorney handled these concerns after he told her that he lost an additional 15 pounds, after an initial loss of 22 pounds in jail. Further, he claimed that counsel lied to him and denied that she told him previously that the State was testing his gun. And, he stated that he did not trust his attorney anymore and thought that she was "working with the State," partly because she informed him how the State was building its case.

The judge asked defense counsel and the prosecutor to comment on Ewalan's concerns. Defense counsel stated that she could not respond because she did not want to violate the attorney-client privilege. The prosecutor asked the

5

court to deny the motion, and stated that Ewalan was not happy with the evidence against him and was blaming his attorney for it.

The court told Ewalan that his attorney was a worthy advocate who represents her clients and their interests. Then, it stated:

> My belief is, in relation to the law, while the standard is that there has to be a conflict of interest and irreconcilable conflict or a complete breakdown in communications, I don't believe that's an exhaustive list.
>
> The first thing I hear you saying is that you're upset because you weren't released on your personal recognizance and you didn't like the questions that your attorney asked you. The questions that she asked you were completely appropriate, because the court has to make a determination whether or not they're going to release you. Ties to the community is one of the issues that needs to be addressed, so the questions that she asked you were appropriate.
>
> Another issue is you said that the State continues to process the case. In these types of serious charges and violent crimes, that happens often. So as the additional discovery comes in, by your indication you've known and been advised about it from your own attorney.

The court went on to express concern with Ewalan's food claims. Defense counsel advised the court that the jail provided Ewalan with a vegetable soup as the court had ordered previously, and that the jail did not have any concerns with continued weight loss.

At the March 4 proceeding on Ewalan's second motion, the court again invited Ewalan to address his concerns about his counsel. The court, after acknowledging receipt of Ewalan's motion to "appoint private counsel" asked Ewalan, "Is there anything you wanted to add to your written motion?" In answer to the court's question, Ewalan stated that he did not want his children to be

involved in the case. The court asked defense counsel and the State if they had anything to add, and they both stated that they did not. The court stated that it had reviewed Ewalan's motion and, because it did not see anything that would justify removing counsel, it denied the motion.

In each of the hearings on Ewalan's two motions for new counsel, the judge allowed Ewalan and counsel to fully express any concerns. Ewalan fails to establish that the inquiry was inadequate. And, Ewalan fails to demonstrate a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication requiring substitution of counsel. At the January proceeding, Ewalan indicated a general loss of trust and dissatisfaction with counsel's handling of the case. After the first motion, the trial court determined that counsel had communicated appropriately with Ewalan. The second motion did not provide support for Ewalan's claim that defense counsel was "torn between the State and client." Because a defendant's general dissatisfaction and distrust of counsel is not sufficient basis to appoint new counsel, Ewalan's claims did not necessitate the substitution of counsel. See Varga, 151 Wn.2d at 200-01.

The trial court did not abuse its discretion in denying Ewalan's motions for new counsel.

II.    Ineffective Assistance of Counsel

Ewalan claims that trial counsel provided ineffective assistance by failing to investigate the case and retain an independent firearms expert.

7

The Sixth Amendment right to counsel includes the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed.2d 674 (1984). In order to prevail on a claim of ineffective assistance of counsel, the defendant must demonstrate (1) deficient performance, that his attorney's representation fell below the standard of reasonableness, and (2) resulting prejudice, that but for the deficient performance, the result would have been different. State v. Hassan, 151 Wn. App. 209, 216-17, 211 P.3d 441 (2009). If a defendant fails to establish either prong, we need not inquire further. Id. at 217. To establish deficient performance, the defendant has the heavy burden of showing that his attorney made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. Id.

This court approaches an ineffective assistance of counsel argument with a strong presumption that counsel's representation was effective. State v. McFarland, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). The defendant has the burden to show that based on the record, there are no legitimate strategic or tactical reasons for the challenged conduct. Hassan, 151 Wn. App. at 217.

Ewalan argues that trial counsel failed to adequately investigate the case because for the first time, mid-trial, she argued that an independent firearms expert was necessary. He cites to Hinton v. Alabama, ____ U.S. ___, 134 S. Ct. 1081, 188 L. Ed. 2d 1 (2014).

In Hinton, the Supreme Court found that defense counsel's performance was deficient because of an inexcusable mistake of law. Id. at 1088-89. There,

8

because counsel failed to understand the resources that state law provided him, he hired an expert that he himself deemed inadequate. Id. at 1089. The court stated explicitly:

> We wish to be clear that the inadequate assistance of counsel we find in this case does not consist of the hiring of an expert who, though qualified, was not qualified enough. The selection of an expert witness is a paradigmatic example of the type of "strategic choic[e]" that, when made "after thorough investigation of [the] law and facts," is "virtually unchallengeable." We do not today launch federal courts into examination of the relative qualifications of experts hired and experts that might have been hired.

Id. (alterations in original) (internal citation omitted) (quoting Strickland, 466 U.S. at 690).

Here, at trial the State asked its crime lab expert, "Can you tell us about the ease or difficulty of getting that gun -- the bullet into the chamber while it's in a holster, if there wasn't one in there to begin with?" When the expert began speaking about the design of Ewalan's holster, defense counsel objected. Out of the presence of the jury, defense counsel argued that the expert would be testifying to an opinion about Ewalan's holster that he had not disclosed previously. Counsel stated that after her pretrial interview with the expert, she decided not to contact an independent expert. She added, "I think given the additional opinion and the direct weight it has on Mr. Ewalan's prior statement to detectives, as well as the defense of this case, it would be material and I would have hired an independent expert to evaluate the opinion." Ultimately, the State withdrew the question to the expert.

Ewalan's claim is similar to the ineffective assistance claim in In re Pers. Restraint of Liu, 188 Wn.2d 525, 397 P.3d 90 (2017). Liu claimed that his counsel should have hired a scent tracking expert to discredit the State's expert testimony. Id. at 545. The court noted that generally the decision whether to call a particular witness is a matter for differences of opinion and therefore presumed to be a matter of legitimate trial tactics. Id. It found that, because counsel did not or could not have known about the State's expert's surprise testimony, counsel's strategy to discredit the evidence through cross-examination alone was not unreasonable. Id.

As in Liu, Ewalan's counsel's cross-examination of the State's expert reveals she had a plan to discredit the State's testing of the evidence. In cross, she highlighted the expert's limited testing of Ewalan's gun, and specifically that there had been no DNA (deoxyribonucleic acid) testing. This case differs from Hinton because, here, defense counsel's decision to not hire an independent expert was not due to a mistake of the law. This was a legitimate trial tactic based on what she knew was at issue. When surprised by a new opinion, she demonstrated appropriate skill and knowledge, objecting, noting the new issue would have prompted her to hire an expert, noting the prejudice, and asking the court to exclude the elicited opinion. Counsel's objection prompted the State to withdraw the question. Ewalan has failed to show how counsel's decision to not hire an independent expert was error or prejudicial.

We find that counsel's decision to not hire an independent firearms expert was not ineffective assistance of counsel.

### III. Lesser Included Offense Jury Instruction

Next, Ewalan argues that the trial court erroneously refused to instruct the jury on the lesser included offense of unlawful display of a weapon.

The right to a lesser included offense instruction is statutory, codified at RCW 10.61.006. State v. Condon, 182 Wn.2d 307, 316, 343 P.3d 357 (2015). In State v. Workman, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978), the court set forth a two-prong test to determine whether a party is entitled to an instruction on a lesser included offense under RCW 10.61.006. Under the first prong of the test (the legal prong), the court asks whether the lesser included offense consists solely of elements that are necessary to conviction of the greater, charged offense. Condon, 182 Wn.2d at 316. Under the second prong (the factual prong), the court asks whether the evidence presented in the case supports an inference that only the lesser offense was committed, to the exclusion of the greater, charged offense. Id. The requesting party is entitled to the lesser included offense instruction when the answer to both questions is yes. Id.

This court reviews a trial court's decision to give a jury instruction de novo if based upon a matter of law, or for abuse of discretion if based upon a matter of fact. Taylor v. Intuitive Surgical, Inc., 187 Wn.2d 743, 767, 389 P.3d 517 (2017). Thus, where the parties' disagreement about an instruction is based on a factual dispute, it is reviewed for an abuse of discretion. Id. To determine whether to give an instruction, the trial judge must merely decide whether the record contains the kind of facts to which the doctrine applies. Id.

11

Here, Ewalan and the State agree, and are correct, that unlawful display of a weapon, codified at RCW 9.41.270(1), is a lesser included offense of assault in the first degree with a firearm, codified at RCW 9A.36.011(1)(a). See State v. Prado, 144 Wn. App. 227, 243, 181 P.3d 901 (2008) (finding unlawful display of a weapon to be a lesser included offense of assault in the first degree). Ewalan could not commit first degree assault without committing unlawful display of a weapon, so the first (legal) prong of the Workman test is met.

In order to satisfy the factual prong, the evidence must support an inference that Ewalan committed only the crime of unlawful display of a weapon. See Prado, 144 Wn. App. at 243. The court views the supporting evidence in the light most favorable to the party requesting the lesser included offense instruction. Condon, 182 Wn.2d at 321.

A person is guilty of assault in the first degree if, with intent to inflict great bodily harm, he assaults another with a firearm. RCW 9A.36.011(1)(a). Three definitions of assault are recognized in Washington: (1) an unlawful touching (actual battery); (2) an attempt with unlawful force to inflict bodily injury upon another, tending but failing to accomplish it (attempted battery); and (3) putting another in apprehension of harm. State v. Elmi, 166 Wn.2d 209, 215, 207 P.3d 439 (2009).

The statute for unlawful display of a weapon provides: it is "unlawful for any person to carry, exhibit, display, or draw any firearm . . . in a manner, under

12

circumstances, and at a time and place that either manifests an intent to intimidate another or that warrants alarm for the safety of other persons." RCW 9.41.270(1).

Here, the court declined to instruct the jury on Ewalan's proposed lesser included offense of unlawful display of a firearm because it did not want to nullify testimony from witnesses other than Ewalan and Mwaniki. Mwaniki testified that Ewalan approached her while yelling, pulled out his gun, pointed it at her head, and that he shot the gun. A McDonald's employee who was outside at the time of the incident testified that she saw a spark and heard a woman screaming "he's got a gun." The employee also testified that, after she saw the spark and heard a loud bang, she saw the woman putting her hands up to cover herself and the man going towards the woman. Navy Lieutenant Andrew Darrah testified that he heard a gunshot and then saw a woman and a child screaming and running towards the McDonald's. Darrah testified that, after the gunshot, he saw the man raise and point the gun in the "general direction" of the woman. It found that Darrah's testimony was inconsistent with giving the lesser included offense.

Ewalan claims that he presented sufficient facts supporting the lesser instruction of unlawful display of a weapon. And, Ewalan distinguishes this case from Prado. In Prado, the court found that the evidence did not support an inference that only the unlawful display statute was violated because the defendant stated that he intended to touch the victim with his knife. 144 Wn. App. at 243-44. Ewalan is correct that he did not testify as Prado did, that he intended to harm Mwaniki. Ewalan testified that Mwaniki tried to take his gun out of his holster and

13

the gun fired while they were struggling over it. Ewalan testified, "I can't really tell you whose finger was on the trigger. I can't really tell you. All what I know is that it fired. So I can't say it was me or it was [Mwaniki]." Ewalan's testimony does not affirmatively establish that Mwaniki fired the gun. But, it is undisputed that the gun was fired. Because firing the gun is more than displaying it, his testimony is inconsistent with his requested lesser offense instruction.

Further, given the testimony of the third parties who contradicted Ewalan's version of events, the cumulative evidence does not support an inference that only unlawful display of a weapon was committed. The jury would have had to disbelieve the cumulative evidence to find the lesser offense. " 'It is not enough that the jury might simply disbelieve the State's evidence.' " State v. Perez-Cervantes, 141 Wn.2d 468, 481, 6 P.3d 1160 (2000) (quoting State v. Fowler, 114 Wn.2d 59, 67, 785 P.2d 808 (1990)).

The trial court did not abuse its discretion in finding that Ewalan was not entitled to the lesser included offense instruction.

IV.    ER 404(b) Evidence

Ewalan argues that the court abused its discretion in admitting evidence of Ewalan's prior threats to Mwaniki under ER 404(b). Specifically, Ewalan argues that the court should not have admitted Mwaniki's testimony that Ewalan had made threats to Mwaniki and that she reported him to police. And, he contends it should not have admitted testimony that Ewalan had told Mwaniki in the past that nothing would happen to him because he was formerly a police officer.

14

Under ER 404(b), evidence of other crimes, wrongs, or acts is presumptively inadmissible to prove character and show action in conformity therewith. State v. Powell, 126 Wn.2d 244, 258, 893 P.2d 615 (1995). However, when demonstrated, such evidence may be admissible for other purposes " 'such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident' ". Id. (quoting ER 404(b)). If admitted for other purposes, a trial court must identify that purpose and determine whether the evidence is relevant and necessary to prove an essential ingredient of the crime charged. Id. at 258-59. Evidence is relevant and necessary if the purpose of admitting the evidence is of consequence to the action and makes the existence of the identified fact more probable. Id. at 259.

To admit prior misconduct evidence, it must be necessary to prove a material issue. Id. at at 262. Therefore, such evidence is only necessary to prove intent when intent is at issue or when proof of the doing of the charged act does not conclusively establish intent. Id. Evidence of prior threats is admissible to show motive or malice. Id. at 260.

We review a trial court's decision to admit or exclude evidence under ER 404(b) for an abuse of discretion. State v. Arrendondo, 188 Wn.2d 244, 256, 394 P.3d 348 (2017). To reverse we must find the decision is unreasonable or based on untenable reasons or grounds. Id. at 355.

15

During motions in limine, the State first articulated the reasons to admit Mwaniki's testimony that Ewalan had told her that nothing would happen to him because he had been a police officer:

> I think the rule allows this type of evidence to show motive and intent. That's what [ER] 404(b) talks about, that the jury needs to understand the context between these people, that this just didn't happen out of the blue with nothing -- no information to help the jury understand what is really going on.
>
> The idea that he made statements to Ms. Mwaniki before saying that nothing would happen to him, the State believes is important for the jury to understand when he pulled out that gun that day that it's likely what was in his mind, that nothing was going to happen to him, because was a prior police officer.

Ewalan objected to the testimony, stating that it was not evidence of intent or motive and, because no one knew when the statements were made, they had no probative value. The court denied Ewalan's motion and stated that it would allow the testimony.

On a subsequent motion in limine, the State asked the court to allow Mwaniki to testify that she had reported to police that she was afraid of Ewalan, and that Ewalan had made threats to her. It argued,

> I think it is important for the jury to hear that she felt that he had made threats along those lines to her in the past, that -- you know, it's in the context of this divorce.
>
> . . . .
>
> The fact that she had been threatened before, the fact that the police had been called before, and some context leading up to this incident is all the State is trying to get into, without getting into details of each particular time she called the police, for example.
>
> . . . .

> I am expecting . . . Ms. Mwaniki to testify that the defendant had threatened her in the past and made comments along the lines that he thought he could get away with it and that that caused fear in her.

Ewalan again argued that prior threats to Mwaniki were not particularly relevant and were extremely prejudicial. The court allowed the evidence, finding that the objections against it were a matter of weight, not admissibility. But, the court also admitted the evidence with the extra limitation that the State would not elicit the specific details of Ewalan's alleged threats.

Ewalan contends that the trial court abused its discretion in admitting the evidence without conducting the required balancing test or articulating a reason supporting the admission. Under ER 404(b) to admit evidence of other crimes, wrongs, or acts, the trial judge is obligated to: (1) identify the purpose for which the evidence is sought to be introduced; and (2) determine whether evidence is relevant to prove an essential element of the crime charged. State v. Dennison, 115 Wn.2d 609, 628, 801 P.2d 193 (1990). The trial judge must weigh on the record the probative value of the relevant evidence against its prejudicial effect. Id.

Here, the trial court did not explicitly state the balancing it applied. However, the State articulated the purpose of the testimony and Ewalan argued that its prejudice outweighed its probative value. We can infer that the court relied solely on those arguments because its ruling was directly afterwards. The court concluded that Ewalan's arguments went to the weight of the evidence, not to whether it was admissible. Evidence of Ewalan's prior threats was relevant to show his motive and intent in holding the gun, and to counter Ewalan's argument

17

that the gun fired by mistake or accident. The State was required to prove that Ewalan assaulted the victim with a firearm, and that he did so to inflict great bodily harm. The State also had to prove that Mwaniki was in reasonable apprehensive and imminent fear of bodily injury. Ewalan's prior threats were highly probative of the required elements.

The trial judge expressed concern that Mwaniki's testimony would not get "into any ancient history" and ruled that Mwaniki would not be allowed to get into specifics of her prior complaints to the police. This shows that the court noted the potential probative value of allowing the evidence against the prejudicial effect. While the record could and should have been more explicit, it is nonetheless adequate for our review. We find that the court did not abuse its discretion in admitting evidence that Ewalan had made threats to Mwaniki, told Mwaniki that nothing would happen to him as a former police officer, and that Mwaniki had reported Ewalan to police.

## V.    Statement of Additional Grounds

Ewalan also makes two claims of ineffective assistance of counsel in a SAG. First, he argues that counsel was ineffective when she failed to object to video testimony at trial, because the court had previously ruled that the parties would read the transcript of the video testimony, in lieu of playing the video. Second, he argues that she was ineffective when she failed to object to testimony of a "no contact order" against Ewalan, because the court had previously ruled the testimony inadmissible.

18

Further, in an addendum to his statement of additional grounds for review, Ewelan assigns error to (1) the court admitting evidence under ER 404(b) of his prior bad acts, and (2) the court denying his motion for substitution of counsel. The arguments in the addendum echo those in Ewalan's briefing and, as addressed above, do not provide any grounds for relief.

A. Video Testimony

Ewalan argues that his counsel was ineffective when she failed to object to the playing of the video testimony.

Pretrial, Ewalan had several objections to specific portions of the videotaped testimony of Darrah. The court addressed its concerns that it would not be able to redact certain portions of the tape. Ewalan responded, "Given the fact that we can't redact it, I don't see any other better way, except for reading the transcript to the jury." The court granted the reading of the transcript instead of playing the video. Then, Ewalan objected to a question in the testimony transcript that indicated that there had been a previous trial. The court granted the objection, redacting the question in the testimony. But, the court overruled all of Ewalan's subsequent objections to the transcript of the videotaped testimony.

At trial, it appears that the court changed course and allowed Darrah's videotaped deposition to play for the jury. Unless the question that the trial court redacted from the transcript was played for the jury, it is unclear that counsel would have had a reason to object to the video over the transcript. The record does not indicate whether that portion was played or not. Ewalan objected to the admitted

19

testimony going back to the jury room. The parties stipulated that neither the transcript nor the video testimony would go back to the jury.

In his SAG, Ewalan argues that playing the video testimony was very prejudicial. He does not appear to argue that the court erred when it overruled his pretrial objections, and he does not articulate why playing the video was more prejudicial than the admitted transcript testimony. There is no evidence in the record that the court did not follow its previous ruling to redact the scheduling question. Ewalan has not articulated anything beyond mere prejudice inherent in adverse evidence. He has not established how his counsel was ineffective.

B. No Contact Order

Ewalan next argues that counsel was ineffective when she failed to object to Mwaniki's testimony about a no contact order against Ewalan. Citing the record on July 11, he claims that the court had ruled previously that the testimony was inadmissible. The "no contact order" to which Ewalan refers is the temporary parenting plan, which contained restrictions on contact between Ewalan and Mwaniki during exchanges of the children, as described above.

Pretrial, Ewalan objected to the admission of that order, but the court admitted the exhibit. After the order was admitted, Ewalan asked if the State was going to be allowed to inquire about prior incidents where Mwaniki alleged Ewalan had violated the order. The State indicated that it was not interested in raising those incidents, and the court barred that potential line of questions.

At trial, the State asked Mwaniki about the temporary parenting plan that was in place on November 12, 2015, when the alleged assault occurred. The State did not elicit testimony from Mwaniki about whether Ewalan violated the order prior to the alleged incident.

Ewalan has not established that counsel was ineffective. His counsel objected to the admission of the temporary parenting plan, but the court overruled the objection. Counsel had no reason to object when Mwaniki testified about the order or the alleged violation on November 12. And, the State did not elicit testimony that the court had barred. Counsel was not ineffective.

We affirm.

_Appelwick, C.J._

WE CONCUR:

_Spearman, J._      _Leach, J._

21