207 P.3d 439 (2009)
STATE of Washington, Respondent,
v.
Ali ELMI, Petitioner.
No. 80380-3.
Supreme Court of Washington, En Banc.
Argued May 22, 2008.
Decided May 21, 2009.
*440 Oliver Ross Davis, Washington Appellate Project Seattle, WA, for Petitioner.
King Co. Prosecutor's Office, Deborah A. Dwyer, Seattle, WA, for Respondent.
C. JOHNSON, J.
¶ 1 We are asked to determine whether under the first degree assault statute, RCW 9A.36.011, intent to inflict great bodily harm transfers to an unintended victim who is uninjured. Ali Elmi was convicted of attempted murder and four counts of first degree assault with a firearm enhancement for firing gunshots into the living room that his estranged wife, Fadumo Aden, occupied along with their three-year-old child and *441 Aden's three- and five-year-old siblings. No one was physically injured. The Court of Appeals affirmed Elmi's conviction for assault against the children, finding that Elmi's intent against Aden transferred to the children. We granted Elmi's petition for review on the issue of transferred intent. We affirm the Court of Appeals.

FACTUAL AND PROCEDURAL HISTORY
¶ 2 On May 18, 2002, Elmi telephoned his estranged wife Fadumo Aden and argued with her about renewing car tags for the car they shared. Later that evening, Aden was in the living room of her mother's house with her two siblings, ages three and five, and her and Elmi's three-year-old child. Aden heard arguing outside, so she parted the curtains to look out the living room window and saw at least two people arguing near the street. After looking out the window, she sat with the children who were watching television. Seconds later, she heard gunshots piercing the living room window.
¶ 3 Aden screamed and moved the children to the kitchen where she dialed 911. Aden was frantic as she talked to the operator. The operator could hear children screaming in the background and, at one point, a child's voice saying that someone was going to kill mommy. Investigating officers found four shell casings within 10 feet of the living room window, three bullet holes in the window, and bullet holes in the curtains, the television screen, and a kitchen cabinet. Several months later, police found a handgun in a car driven by a friend of Elmi. Forensic testing matched the shell casings to the handgun. Elmi was later arrested driving the same car.
¶ 4 The State charged Elmi with attempted murder and four counts of first degree assault with a firearm enhancement. Aden testified at trial that she could not identify the shooter. She said she told the 911 operator that Elmi fired the shots because he was the first person who came to mind when the operator asked if she knew the shooter. The children did not testify. Aden doubted the children knew what was going on and testified that they were reacting to her screams rather than the gunshots.
¶ 5 The trial court provided the jury with instruction 20, which addressed transferred intent:
If a person assaults a particular individual or group of individuals with a firearm with the intent to inflict great bodily harm and by mistake, inadvertence, or indifference, the assault with the firearm took affect (sic) upon an unintended individual or individuals, the law provides that the intent to inflict great bodily harm with a firearm is transferred to the unintended individual or individuals as well.
Clerk's Papers (CP) at 181. The jury rendered a general verdict finding Elmi guilty as charged. The trial court merged one count of first degree assault with the attempted murder conviction and sentenced Elmi accordingly.
¶ 6 The Court of Appeals affirmed Elmi's assault convictions against the children. State v. Elmi, 138 Wash.App. 306, 156 P.3d 281 (2007).[1] In doing so, the court applied the reasoning from State v. Wilson, 125 Wash.2d 212, 883 P.2d 320 (1994), to conclude, consistent with the jury instruction, that the statutory intent against Aden, i.e., the intent to inflict great bodily harm, did not have to match a specific victim and proof of Elmi's intent as to Aden satisfied the statutory intent element for the assaults against the children. The court found that even if specific intent was required to match a specific victim, the doctrine of transferred intent could be applied to transfer the intent against Aden to intent against the children. The court relied on case law from other states in rejecting Elmi's argument that the doctrine should not apply when unintended victims suffer no injury or the defendant is unaware of their presence. Finally, the court found that the State provided sufficient evidence to prove that the children were placed in apprehension of harm and that *442 Elmi had the requisite intent for purposes of the applicable common law forms of assault. We granted review on the issue of transferred intent. State v. Elmi, 163 Wash.2d 1005, 180 P.3d 784 (2008).

ISSUE
¶ 7 Whether there is sufficient evidence of intent to support Elmi's convictions of first degree assault against the children.

ANALYSIS

First Degree Assault
¶ 8 Elmi requests that we reverse his convictions of first degree assault against the children on the basis that the State failed to present sufficient evidence of specific intent to assault the children. He contends that jury instructions 17 (definitions of assault) and 20 (transferred intent) erroneously relieved the State of the burden of proving every element of the crime.[2] In reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the State and ask whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. State v. Mines, 163 Wash.2d 387, 391, 179 P.3d 835 (2008). We draw all reasonable inferences from the evidence in favor of the State.
¶ 9 Assault in the first degree is defined by statute, in relevant part: "A person is guilty of assault in the first degree if he or she, with intent to inflict great bodily harm ... assaults another with a firearm...." RCW 9A.36.011(1)(a) (emphasis added). To uphold Elmi's first degree assault convictions, we must find that each element of the crime is satisfied  that Elmi, with (1) intent to inflict great bodily harm, (2) assaulted (3) another (4) with a firearm. As noted above, we granted review only on the question of transferred intent.
¶ 10 The mens rea for first degree assault is the specific intent to inflict great bodily harm. Specific intent is defined as intent to produce a specific result, as opposed to intent to do the physical act that produces the result. Wilson, 125 Wash.2d at 218, 883 P.2d 320. First degree assault does not, under all circumstances, require that the specific intent match a specific victim.
¶ 11 The term assault in RCW 9A.36.011(1)(a) constitutes an element of the crime of first degree assault. State v. Smith, 159 Wash.2d 778, 788, 154 P.3d 873 (2007) (finding the term assault constitutes an essential element of the crime of second degree assault). Because assault is not defined in the criminal code, courts have turned to the common law for its definition. Three definitions of assault are recognized in Washington: (1) an unlawful touching (actual battery); (2) an attempt with unlawful force to inflict bodily injury upon another, tending but failing to accomplish it (attempted battery); and (3) putting another in apprehension of harm.[3] These definitions are merely descriptive of the term assault and do not constitute additional alternative means of committing the crime of assault. Smith, 159 Wash.2d at 785, 154 P.3d 873.[4]
*443 ¶ 12 It is undisputed that Elmi fired gunshots specifically intending to inflict great bodily harm upon Aden. The question remains whether Elmi's intent against Aden transfers under RCW 9A.36.011 to meet the intent element against the children.

Intent
¶ 13 Elmi argues that proof of assault of the children required proof of specific intent to either attempt a battery against the children or to put the children in apprehension of harm. Elmi claims that contrary to actual assault, attempted battery and apprehension of harm definitions of assault require that specific intent match a specific victim. Because he was unaware of the children's presence in the house, Elmi contends that his first degree assault convictions against the children must be reversed for insufficiency of the evidence.
¶ 14 Elmi's assertion is only partially supported by the rule in State v. Wilson, 125 Wash.2d 212, 883 P.2d 320 (1994). We determined in Wilson that assault in the first degree requires a specific intent. This means the intent to produce a specific result is an essential element to the crime of assault, whether assault is defined under the circumstances by common law definitions of actual battery, attempted battery, or apprehension of harm. We noted, however, that assault does not, under all circumstances, require that the specific intent match a specific victim. Wilson, 125 Wash.2d at 218, 883 P.2d 320. In Wilson, this court reinstated the defendant's two first degree assault convictions, finding that under RCW 9A.36.011, once the specific intent to inflict great bodily harm is established, this intent may transfer to any unintended victim. After being ejected from a tavern for rowdy behavior, Wilson fired several gunshots into the tavern, missing his intended victims, Jones and Judd, but striking two unintended victims, Hurles and Hensley. Reading the various assault statutes in combination with the common law definitions of assault, we concluded that Wilson assaulted Hurles and Hensley in the first degree "when, with an intent to cause great bodily harm to Jones or Judd or both, Wilson discharged bullets from a firearm into the neck of Hurles and into the side of Hensley." Wilson, 125 Wash.2d at 218, 883 P.2d 320. We held the doctrine of transferred intent was unnecessary to convict Wilson of assaulting the unintended victims because the doctrine is generally applied only when a criminal statute matches specific intent with a specific victim. Because RCW 9A.36.011 does not require that specific intent match a specific victim, under a literal interpretation of the statute, Wilson's specific intent to inflict great bodily harm transferred to the two people who were actually physically injured. Wilson, 125 Wash.2d at 219, 883 P.2d 320. Wilson is distinguishable to the extent that the case involved an actual battery (gunshot wounds) upon unintended victims, where it was simple to specify the victims. But read as a whole, Wilson does not limit intent to that which was aimed at a person wounded as a result of the assault. Wilson may have known others besides his intended victims were present in the tavern when he fired gunshots. Yet Wilson supports the general rule that under RCW 9A.36.011, specific intent need not match a specific victim.
¶ 15 The present case implicates the attempted battery and apprehension of harm definitions of assault. And just as in the present matter, the specific persons Wilson intended to harm were also assaulted because an attempted battery was perpetrated against them. The assault statute provides for the various methods of assault to be treated equally. As such, whether the unintended victim is actually battered (like in Wilson) or not (like in this case) is irrelevant for purposes of determining whether an assault occurred.
¶ 16 Indeed, RCW 9A.36.011 provides that once the mens rea is established, any unintended victim is assaulted if they fall within the terms and conditions of the statute. Wilson, 125 Wash.2d at 219, 883 P.2d 320. This conclusion is supported by the plain language *444 of RCW 9A.36.011(1)(a): "A person is guilty of assault in the first degree if he or she, with intent to inflict great bodily harm: ... [a]ssaults another with a firearm...." (emphasis added). In so reasoning, we hold in accord with Wilson, that once the intent to inflict great bodily harm is established, usually by proving that the defendant intended to inflict great bodily harm on a specific person, the mens rea is transferred under RCW 9A.36.011 to any unintended victim.
¶ 17 Because RCW 9A.36.011 encompasses transferred intent, the Court of Appeals did not need to analyze this matter under the doctrine of transferred intent. As such, we do not need to reach the doctrine of transferred intent either and proceed, instead, under RCW 9A.36.011.
¶ 18 Where a defendant intends to shoot into and to hit someone occupying a house, a tavern, or a car, she or he certainly bears the risk of multiple convictions when several victims are present, regardless of whether the defendant knows of their presence. And, because the intent is the same, criminal culpability should be the same where a number of persons are present but physically unharmed.
¶ 19 In this case, Elmi intended to inflict bodily injury upon Aden or to put her in apprehension of bodily harm. Elmi made that attempt when he opened gunfire into the living room that Aden and the children occupied. Also, viewing the evidence in the light most favorable to the State, there is sufficient evidence that the children were in fact put in apprehension of harm. When Elmi fired the gunshots, the children were sitting in the living room, watching television. Bullets pierced the living room window, curtains, and television screen. At the beginning of the 911 tape, the children are screaming and crying, and, as the Court of Appeals noted, the children continue to make intermittent sounds of distress throughout the duration of the 911 call. Whether or not the children comprehended that a gun was being fired, we could infer from this evidence that the children were put in apprehension of bodily harm. This specific intent to harm Aden transferred to the children under RCW 9A.36.011. Finding the intent element is satisfied as to the children, we affirm Elmi's first degree assault convictions.

CONCLUSION
¶ 20 The evidence viewed in the light most favorable to the State is sufficient to support the convictions of first degree assault against the children. As such, we find no impropriety with the jury instructions. We affirm the Court of Appeals.
WE CONCUR: GERRY L. ALEXANDER, C.J., SUSAN OWENS, JAMES M. JOHNSON, DEBRA L. STEPHENS, TOM CHAMBERS, JJ.
MADSEN, J. (dissenting).
¶ 21 I agree with the majority that "[f]irst degree assault does not, under all circumstances, require that the specific intent match a specific victim." Majority at 442. And I continue to agree with this court's decision in State v. Wilson, 125 Wash.2d 212, 883 P.2d 320 (1994). I cannot agree, however, that the rule articulated in Wilson, the first degree assault statute itself, or the doctrine of transferred intent supports convictions against Ali Elmi for first degree assault of the uninjured children in this case.
¶ 22 To convict Elmi of first degree assault, the State must prove all elements in RCW 9A.36.011. As the majority notes, "[t]he term `assault' ... constitutes an element of the crime of first degree assault." Majority at 442. There are three common law definitions of assault. Because the children were unharmed, the State must prove either the second or third definitions of assault: that Elmi attempted, with unlawful force, to injure the children (attempted battery) or attempted to create in the children apprehension of fear and bodily injury (apprehension of harm). Majority at 442-43 (citing State v. Smith, 159 Wash.2d 778, 788, 154 P.3d 873 (2007)). Under any definition of assault, the first degree assault statute requires the State to prove Elmi's intent to inflict great bodily harm on the children. RCW 9A.36.011(l)(a).
¶ 23 The majority analyzes Wilson against the facts of this case to hold, "in accord with *445 Wilson," that once the State establishes Elmi's intent to harm Fadumo Aden, "the mens rea is transferred under RCW 9A.36.011" to the children. Majority at 443-44 (emphasis added). While I agree with the majority that the first degree assault statute embodies the doctrine of transferred intent, I do not agree that Elmi's convictions for assaulting the children can be affirmed under the statute or the precedent established in Wilson. I also disagree that we can proceed under RCW 9A.36.011 without analysis of the doctrine of transferred intent. The majority acknowledges that RCW 9A.36.011 "encompasses transferred intent." Majority at 444. However, they dismiss discussion of the doctrine altogether. I respectfully cannot see how this court can grant Elmi's "petition for review on the issue of transferred intent" and refuse to discuss application of the doctrine under the statute. Majority at 440-41. Therefore, I respectfully dissent.

Transferred Intent
¶ 24 The doctrine of transferred intent was developed at common law in order to provide a mechanism to find a defendant who shoots at B but misses and hits C instead "just as guilty as if his aim had been accurate." 1 Wayne R. LaFave, Substantive Criminal Law § 6.4(d), at 473 (2003). Indeed, the very reason for the doctrine is to relieve the prosecution of proving the defendant intended to injure an unintended victim. See State v. Neighbors, noted at 82 Wash.App. 1075, 1996 WL 493184, at *2 n. 1 (unpublished opinion) ("Defendants ... object to the State's use of the [transferred intent] doctrine because it relieves the State of its burden of proving specific intent to injure a specific victim.") (citing State v. Salamanca, 69 Wash.App. 817, 825-27, 851 P.2d 1242, review denied, 122 Wash.2d 1020, 863 P.2d 1353 (1993)); John P. Einwechter, New Developments in Substantive Criminal Law Under the Uniform Code of Military Justice, 1998 Army Law. 20, 23 ("[U]sing the doctrine of transferred intent to multiply liability for attempted murder gives the government a free ride by relieving it of its constitutional burden of proving the accused's guilt on every element of the offense beyond a reasonable doubt.").
¶ 25 In Wilson this court recognized that RCW 9A.36.011 codifies the doctrine of transferred intent and makes application of the doctrine a function of the statute instead of a function of the common law: "once the intent to inflict great bodily harm is established... the mens rea is transferred under RCW 9A.36.011 to any unintended victim." Wilson, 125 Wash.2d at 218, 883 P.2d 320 (emphasis added); State v. Johnson, 147 Wash.App. 276, 194 P.3d 1009 (unpublished portion) ¶ 46, 147 Wash.App. 276, 194 P.3d 1009 (2008) ("As our Supreme Court explained in Wilson, so far as first degree assault is concerned, the doctrine of transferred intent had been codified by RCW 9A.36.011."). However, there is nothing in RCW 9A.36.011 to suggest that the legislature intended to codify a concept broader than the common law doctrine that would allow multiple first degree assault convictions to stand where there is proof that the person the defendant intended to assault was in fact assaulted and no unintended victim received actual injury.
¶ 26 Indeed, chapter 9A.36 RCW clearly evinces the legislature's intent to criminalize acts of physical harm and adjusts a defendant's potential culpability according to the act and his mental state. RCW 9A.36.012-.041 (criminalizing the acts of second, third, and fourth degree assault as well as drive-by shooting and reckless endangerment). It is clear from the legislature's scheme, which punishes commensurate with mental culpability, that the statute was not intended to reach beyond the scope of the common law concept to impose multiple punishments where no unintended victim received injury. Simply put, the doctrine of transferred intent, whether at common law or as codified, is not and never has been intended to apply in circumstances where no unintended victim is injured.
¶ 27 Wilson, the sole Washington case relied upon by the majority, is in accord. Although the majority recognizes that "Wilson is distinguishable to the extent that the case involved an actual battery," it nonetheless finds Wilson applicable to the circumstances *446 here where no actual battery occurred. Majority at 443. But the factual distinction in Wilson is critical. Wilson relied on the actual injuries suffered by the unintended victims to prove the defendant's specific intent to inflict great bodily harm: "we are persuaded that Wilson assaulted Hurles and Hensley [the unintended victims] in the first degree when ... Wilson discharged bullets from a firearm into the neck of Hurles and into the side of Hensley." Wilson, 125 Wash.2d at 218, 883 P.2d 320. Thus, in fact, Wilson did not apply the first degree assault statute beyond the reaches of the common law doctrine.[1]
¶ 28 Indeed, one reason the doctrine generally has not been applied to instances where no one is injured is that without actual injury, evidence of the defendant's specific intent to "inflict great bodily harm" is difficult to prove. As one Washington court has noted:
[a] majority of jurisdictions have extended the scope of the crime of assault to include, in addition to (not as an alternative to) the attempted-battery type of assault, the tort concept of the civil assault, which is committed when one, with intent to cause a reasonable apprehension of immediate bodily harm (though not to inflict such harm), does some act which causes such apprehension. It is sometimes stated that this type of assault is committed by an act (or by an unlawful act) which reasonably causes another to fear immediate bodily harm. This statement is not quite accurate, however, for one cannot (in those jurisdictions which have extended the tort concept of assault to criminal assault) commit a criminal assault by negligently or even recklessly or illegally acting in such a way (as with a gun or a car) as to cause another person to become apprehensive of being struck. There must be an actual intention to cause apprehension, unless there exists the morally worse intention to cause bodily harm.
State v. Krup, 36 Wash.App. 454, 458-59, 676 P.2d 507 (1984) (second emphasis added) (quoting Wayne R. LaFave & Austin W. Scott, Jr., Handbook on Criminal Law 611 (1972)).
¶ 29 I respectfully disagree with the majority that RCW 9A.36.011 can be broadened to cases where unknown victims suffer no injury simply because "the intent is the same." Majority at 444. "`Evidence of intent ... is to be gathered from all of the circumstances of the case, including not only the manner and act of inflicting the wound, but also the nature of the prior relationship and any previous threats.'" Wilson, 125 Wash.2d at 217, 883 P.2d 320 (alteration in original) (internal quotation marks omitted) (quoting State v. Ferreira, 69 Wash.App. 465, 468, 850 P.2d 541 (1993)). "Specific intent cannot be presumed, but it can be inferred as a logical probability from all the facts and circumstances." Id. (emphasis added). A solid evidentiary basis for a defendant's intent is necessary because the law requires that a defendant be held just as liable as he is culpable  no more, no less. See 1 LaFave, supra, § 6.4(d), at 473 ("In the unintended-victim... situation ... it is the view of the criminal law that A is just as guilty as if his aim had been accurate." (emphasis added)); Allen Z. Gammage & Charles F. Hemphill, Jr., Basic Criminal Law 87 (2d ed.1979) (noting that when a farmer accidentally injures his sworn enemy and later expresses pleasure at the accident, "no crime occurred" because "the farmer who caused the injury had no guilty state of mind"). Upholding a first degree assault conviction without proof of intent to inflict great bodily harm violates a defendant's right to have every element of the crime proved beyond a reasonable doubt. In the circumstances of this case, the intent is not the same.
*447 ¶ 30 The majority's extension of the doctrine of transferred intent to the case of attempted battery is particularly problematic. Assault by attempted battery is defined as "`an attempt, with unlawful force, to inflict bodily injury upon another, accompanied with the apparent present ability to give effect to the attempt if not prevented.'" State v. Byrd, 125 Wash.2d 707, 712, 887 P.2d 396 (1995) (quoting Howell v. Winters, 58 Wash. 436, 438, 108 P. 1077 (1910)). By the terms of its definition and Washington case law, assault by attempted battery requires proof of specific intent to cause bodily injury. Byrd, 125 Wash.2d at 713, 887 P.2d 396; State v. Frazier, 81 Wash.2d 628, 631, 503 P.2d 1073 (1972). As a crime of attempt, first degree assault by attempted battery sanctions what a defendant intended to do but did not accomplish, not the defendant's unintended and unaccomplished potential consequences. Using the transferred intent doctrine to hold a defendant liable for inchoate crimes like attempted battery criminalizes the unintended and unaccomplished potential consequences of a defendant's actions.
¶ 31 This reasoning finds significant support in other jurisdictions. In Ford v. State, 330 Md. 682, 625 A.2d 984 (Ct.App.1993), the Maryland Court of Appeals refused to apply the doctrine of transferred intent to uphold assault convictions against a defendant convicted of multiple counts of assault and battery, among other charges, for throwing rocks at moving vehicles on a highway. Noting that the "purpose of transferred intent is to link the mental state directed towards an intended victim, i.e., the intent to kill, maim, or disable that person, with the actual harm caused to another person," id. at 710, 625 A.2d 984, the court held the doctrine inapplicable "[w]here the crime intended has actually been committed against the intended victim, transferred intent is unnecessary and should not be applied to acts against unintended victims." Id. at 712, 625 A.2d 984 (emphases added).
¶ 32 In State v. Hinton, 227 Conn. 301, 305, 630 A.2d 593 (1993), the defendant fired one shot from a sawed-off shotgun loaded with "triple ought" buckshot. This one shot contained eight pellets and killed three people while injuring one other. Id. The defendant was convicted at trial of three counts of murder (for the three murdered victims), one count of capital felony (for use of a firearm), one count of attempted murder (for the nonfatally injured victim), and one count of assault (also for the nonfatally uninjured victim). Id. at 302-03, 630 A.2d 593. The Connecticut Supreme Court refused to uphold the trial court's application of the doctrine of transferred intent and overturned the defendant's attempted murder and assault in the first degree convictions. Id. at 317-18, 630 A.2d 593. In overturning the attempted murder conviction, the court noted that a very small number of jurisdictions apply the doctrine of transferred intent to attempt crimes and held that the "rule of lenity leads us to conclude that the transferred intent doctrine should not be applied" to attempt crimes. Id. at 317, 630 A.2d 593 (emphasis added).
¶ 33 In People v. Bland, 28 Cal.4th 313, 317, 121 Cal.Rptr.2d 546, 48 P.3d 1107 (2002), the defendant intended to kill and did kill one victim. The defendant also injured, though did not kill, two unintended victims. Noting that "[t]he business of `transferring'" mens rea is more complex for inchoate crimes, the California Court of Appeals held that doctrine does not extend to "unintended victims to an inchoate crime like attempted murder." Id. at 326-27, 121 Cal.Rptr.2d 546, 48 P.3d 1107. "The crime of attempt sanctions what the person intended to do but did not accomplish, not unintended and unaccomplished potential consequences." Id. at 327, 121 Cal. Rptr.2d 546, 48 P.3d 1107.
¶ 34 Similarly, in State v. Johnson, 205 Ariz. 413, 417-18, 72 P.3d 343 (2003), the Arizona Supreme Court reversed a trial court ruling that where "`the result of the shot [at a police officer on the street near bystanders] caused those standing around to be in reasonable apprehension of imminent physical injury, ... the proper concept in that situation is transferred intent.'" Id. at 416, 72 P.3d 343. The Supreme Court held that "[i]t cannot be presumed from the act of firing a shot at Officer D that Johnson also intended to scare Officer D or any of the bystanders." Id. at 418, 72 P.3d 343 (emphasis added).
*448 ¶ 35 As other courts have observed, use of the doctrine in a case where no unintended victim is injured makes a defendant's potential liability limitless.[2]See Ford, 330 Md. at 712, 625 A.2d 984 ("[T]ransferred intent makes a whole crime out of two halves by joining the intent as to one victim with the harm caused to another victim. Transferred intent does not make two crimes out of one."); Ramsey v. State, 56 P.3d 675, 681-82 (Alaska Ct.App.2002) (where defendant brought a gun to school, firing multiple shots at many people and killing two, the court ruled against the State's attempt to use the doctrine of transferred intent as a means to find the defendant guilty of attempted murder of an injured victim who sat near a murdered victim at the time of the shootings. The court held that "[t]he problem with the State's argument is that its logic leads to the conclusion that [defendant] could have been found guilty of the attempted murder of everyone in the school.'" (emphasis added)). Using Elmi's intent to harm Aden to uphold convictions for first degree assault of unharmed, unintended victims creates a principle of limitless liability.
¶ 36 Turning to assault by apprehension of harm, the majority does not address directly whether or not the specific intent required to convict must match a specific victim. To the extent the majority suggests that Elmi's intent to actually injure Aden can be transferred into a different intent  an intent to create an apprehension of harm in the children  such use of the transferred intent doctrine is inappropriate as explained above. However, even assuming first degree assault by apprehension of harm does not require the specific intent of the defendant to match a specific victim, the intent to place someone in apprehension of harm logically requires that the actor in the situation at the very least know of the person's presence.
¶ 37 Thus, even if the doctrine of transferred intent can be legitimately used in cases of unknown, unharmed victims, the State here still must show the children were in fact fearful of the shots and apprehended the harm. State v. Nicholson, 119 Wash. App. 855, 862, 84 P.3d 877 (2003) (holding that the apprehension must be felt by the victim, not some other person and that where the victim is a child who is too young to understand the danger, it is not relevant if someone else feared for the child's safety), overruled on other grounds by Smith, 159 Wash.2d 778, 154 P.3d 873; State v. Bland, 71 Wash.App. 345, 356, 860 P.2d 1046 (1993) (holding that fear and apprehension after the fact is insufficient to find an assault and that "the fear and apprehension element" cannot be "transferred along with the intent" (emphasis omitted)), overruled in part by Smith, 159 Wash.2d 778, 154 P.3d 873.
¶ 38 I disagree with the majority that "[w]hether or not the children comprehended that a gun was being fired, we could infer from this evidence [(the children crying on the 911 call)] that the children were put in apprehension of bodily harm." Majority at 444. None of the children, ages three to five at the time of the shooting, testified. Moreover, as in Bland, 71 Wash.App. 345, 860 P.2d 1046, and Nicholson, 119 Wash.App. 855, 84 P.3d 877, the only witness, Aden, testified that she doubted the children knew what was going on and that she believed any reaction by the children was an after-the-fact response to her screams rather than the gunshots. Verbatim Report of Proceedings (Apr. 14, 2005) at 60. Because there is no evidence that the children themselves actually apprehended harm from the gunshots, the State failed to meet its burden.
¶ 39 A proper application of the assault statute will not permit risky or dangerous behavior to go unpunished. In cases where no victim suffers actual injury but the defendant "creates a substantial risk of death or serious physical injury to another person[(s)]," the legislature has created the crimes of drive-by shooting or reckless endangerment. RCW 9A.36.045(1), .050; compare *449 11 Washington Practice: Washington Pattern Jury Instructions: Criminal 35.03 (2008) (WPIC) stating that "a person commits the crime of assault in the first degree when, with intent to inflict great bodily harm, he or she assaults another and inflicts great bodily harm" with 11 WPIC 35.32 stating that "[a] person commits the crime of reckless endangerment when he or she recklessly engages in conduct that creates a substantial risk of death or serious injury to another person." These statutes directly address the difficulty of proving specific intent as required by the first degree assault statute by requiring only proof of a general intent of recklessness. This court should not expand the reach of RCW 9A.36.011 beyond that intended by the legislature in order to affirm these convictions.

Conclusion
¶ 40 The majority inappropriately broadens the conceptual transfer of intent codified in RCW 9A.36.011 to create a dangerously limitless principle of law: as long as the defendant has the requisite mens rea with regard to any one person, she or he "bears the risk of multiple convictions ... regardless of whether the defendant knows of their presence." Majority at 444. Under this reasoning, the act of firing a single bullet at a single intended victim can support criminal liability limited only by the number of people who apprehend harm from the shot. The legislature has provided other statutory options for charging a defendant who causes no injury but "creates a substantial risk of death or serious physical injury to another person[(s)]." RCW 9A.36.050. With these statutes and the conceptual difficulties that arise when intent is transferred to uninjured victims, I find it unlikely that the legislature intended the first degree assault statute as a vehicle to impose nearly limitless criminal liability. I cannot uphold Elmi's convictions of first degree assault for unintended, unknown victims.
WE CONCUR: MARY E. FAIRHURST and RICHARD B. SANDERS, JJ.
NOTES
[1] For his actions against Aden, Elmi was convicted of attempted first degree murder and first degree assault. The Court of Appeals affirmed Elmi's attempted murder conviction but vacated the assault conviction as violating double jeopardy. The attempted murder conviction is not before us.
[2] Elmi did not object to the transferred intent instruction at trial. However, the State does not contest this claim being raised for the first time on appeal.
[3] These definitions of assault were provided to the jury in instruction 17:

An assault is an intentional touching or striking or shooting of another person that is harmful or offensive regardless of whether any physical injury is done to the person. A touching or striking or shooting is offensive if the touching or striking or shooting would offend an ordinary person who is not unduly sensitive.
An assault is also an act done with intent to inflict bodily injury upon another, tending but failing to accomplish it and accompanied with the apparent present ability to inflict the bodily injury if not prevented. It is not necessary that bodily injury be inflicted.
An assault is also an act done with the intent to create in another apprehension and fear of bodily injury, and which in fact creates in another a reasonable apprehension and imminent fear of bodily injury even though the actor did not actually intend to inflict bodily injury. CP at 178. Instruction 17 mirrors Washington Practice: Washington Pattern Jury Instructions: Criminal 35.50 (2008).
[4] We reject Elmi's assertion that instruction 17 deprived him of his due process right to jury unanimity on the types of intent and assaultive harm found. Elmi argues he is entitled to jury unanimity because each common law definition of assault constitutes an alternative means of committing the crime and is so disparate as to constitute a separate offense. This argument is meritless. As noted above, this court has held that the common law definitions of the term "assault" are merely descriptive and do not create alternative means of committing the crime of assault. Smith, 159 Wash.2d at 785-87, 154 P.3d 873. Therefore, there is no due process right to jury unanimity.
[1] I respectfully disagree with the majority that Wilson can be broadened to cases where no one is injured simply because "[t]he assault statute provides for the various methods of assault to be treated equally." Majority at 443. As the majority notes, "assault" is not defined in the criminal code and courts have instead turned to the "common law for its definition." Id. at 442. As the statute makes no mention of the various "methods" or definitions of assault, guidelines for their treatment and interrelation to the doctrine of transferred intent must come from the common law.
[2] Neither the majority nor the State cites a mechanism by which the potential criminal liability of a defendant can be limited where the doctrine of transferred intent is used to prove intent against unintended, unharmed victims. If Aden had planned a gathering of 12 people at her home the evening Elmi fired shots into the room, under the majority's reasoning he would have been guilty of 12 additional counts of first degree assault. Criminal liability would attach even if he had no knowledge of the existence or identity of the additional people inside the room or whether those individuals were aware of any threat aimed at them.