# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  53023-6-II |
| Respondent, | |
| v. | |
| LOKENI JUNIOR NUUSOLIA, | |
| Appellant. | UNPUBLISHED OPINION |

WORSWICK, J. — A jury found Lokeni Nuusolia guilty of unlawful imprisonment and second degree assault.  He also pleaded guilty to fourth degree assault.   At sentencing, the trial court imposed a criminal filing fee.  Nuusolia appeals, arguing that there was insufficient evidence to convict him of second degree assault.  He also argues, and the State concedes, that the trial court improperly imposed the criminal filing fee.

We hold that there was sufficient evidence to convict the defendant of second degree assault and the trial court improperly imposed the criminal filing fee.  Accordingly, we affirm Nuusolia's convictions, but remand to strike the criminal filing fee.

FACTS

Lokeni and Eseneiaso Nuusolia had been married for approximately eleven years and were living separately for the two years prior to trial.[1] One morning, Nuusolia was taking care of their children while Eseneiaso was at work. When Eseneiaso arrived at her apartment complex following her shift at work, she got into an argument with Nuusolia. The argument escalated into an altercation at a street intersection, the details of which are disputed. Law enforcement officers responded.

Nuusolia was charged with first degree kidnapping, fourth degree assault, interfering with the reporting of domestic violence, first degree assault, and two counts of second degree assault. The case proceeded to a jury trial. At trial, witnesses testified to varying accounts.

Eseneiaso testified that she came home from work upset and tired. Nuusolia asked her for money to purchase gas for his vehicle. They started arguing and Nuusolia put his hand over Eseneiaso's mouth to quiet her. She pulled away from Nuusolia, but he grabbed her wrist to prevent her from getting away. She pulled away from Nuusolia again and ran from the parking lot toward the intersection. Nuusolia got in his vehicle and drove next to Eseneiaso while she ran. He repeatedly asked her to get in the vehicle and talk to him.

Eseneiaso also testified that when she reached the intersection she went behind some construction barriers to avoid Nuusolia. Nuusolia started bumping into the construction barriers with his vehicle. Although Eseneiaso testified that she did not believe Nuusolia was trying to run her over, she was scared and was saying, "Help." 5 Verbatim Report of Proceedings (VRP)

---

[1] Because the Nuusolias share the same last name, we refer to Eseneiaso by her first name for clarity. No disrespect is intended.

at 50. At some point she entered a bystander's vehicle. Nuusolia exited his vehicle, opened the door to the bystander's vehicle and grabbed Eseneiaso. Eseneiaso made multiple statements to the officers on the day of the incident which she later recanted during her testimony. The trial court admitted evidence of handwritten statements Eseneiaso had given to police officers after the incident which said, among other things, that Nuusolia "start[ed] beating [her] up in the car." 5 VRP at 64.

Nuusolia testified in his own defense. He stated that when Eseneiaso arrived home from work that morning, Nuusolia asked her for money because they had no water. When Nuusolia got in his car, the gas tank was empty, and so he asked Eseneiaso for more money. She refused and started walking away, upset. They both started screaming at each other. Nuusolia put his hands over Eseneiaso's mouth to quiet her.

Nuusolia also testified that at some point, Eseneiaso started running. He was mad, angry, and shocked that Eseneiaso refused to do what he told her to do. Nuusolia drove his car so he could get close to her, but he never intended to run her over. In an effort to not block traffic, he continued driving, pushing the construction barriers, and eventually parked parallel to them. Nuusolia got out of his car and Eseneiaso ran across the road and got into a bystander's vehicle. Nuusolia went back to his car and drove closer to the bystander's vehicle. Eseneiaso opened the door and Nuusolia grabbed her out of the vehicle. Afterward, Eseneiaso got in Nuusolia's vehicle and they drove back to the apartment. They went into the house and continued the argument. When Nuusolia left the apartment, the police had arrived.

Pierce County Sheriff's Deputy Christopher Mancuso testified that dispatch received "multiple calls from people stating that there was a male attempting to hit a female with a

vehicle." 4 VRP at 69. When he arrived on scene he took custody of Nuusolia. Nuusolia made statements to Deputy Mancuso. Nuusolia told him that "he [had] tried to force [Eseneiaso] into the car and that she had fought him off or was resisting." 4 VRP at 72. Nuusolia was very angry that Eseneiaso would not get into his vehicle. Nuusolia said, "[H]e eventually was able to force her [back] into the car [and] drive her back to the apartment, but that she had physically resisted prior to that every time he tried to grab her and pull her into the car." 4 VRP at 72.

Pierce County Sheriff's Officer Dennis Banach also testified that he received a call from dispatch stating that a male was attempting to run over a woman by running into construction barriers. Dispatch also stated that the male dragged the female back into the SUV. When he arrived at the scene he observed Eseneiaso crying. He observed that she was bleeding from the left side of her mouth and had scratches on her face, neck, and chest.

Christopher Alcantar, a witness at the scene, testified that he was in his vehicle when he saw a man in a vehicle chasing a woman. He heard a woman "screaming and yelling bloody murder." 3 VRP at 97. Alcantar further testified that eventually the man exited the vehicle and put the woman in a choke hold to get her back in his vehicle. When asked why he called 911 he said, "Because I saw a woman fearing for her life getting attacked and assaulted and someone trying to run her over." 3 VRP at 102.

Theodore Wallace, another witness, testified that he was driving his vehicle when he saw a woman on the side of the intersection. She was screaming, "Help me. Help me." 3 VRP at 111. He saw a vehicle drive up over the curb into the grass. He believed Nuusolia "was trying to hit [the woman] with the vehicle." 3 VRP at 111. When asked what made him think that Nuusolia was attempting to hit the woman with the vehicle he stated, "He was barreling through

4

the [construction] barriers . . . and knocking those over and going around the corner and chasing her everywhere she went." 3 VRP at 112. The woman was yelling, "Help me. Help me. Someone help me. He's going to kill me." 3 VRP at 112.

Wallace further testified that the woman went up to vehicles that were stopped in the intersection and repeatedly said, "Let me in. Let me in. Help me, please. Someone help me." 3 VRP at 113. One of the vehicles let her in. Nuusolia got out of his vehicle and punched the windows of the bystander's vehicle. Wallace said that Nuusolia grabbed the woman out of the car, drug her over to his black SUV, threw her in the back seat, and started punching her. He said that the woman "seemed to be fearful [of] her life or fearful [of] being injured." 3 VRP at 118.

Additionally, three other bystanders and two additional police officers testified that Nuusolia was trying to run over Eseneiaso with the vehicle and that Eseneiaso was screaming and crying throughout the incident.

The jury found Nuusolia guilty of unlawful imprisonment, second degree assault, and fourth degree assault. At sentencing, the trial court found Nuusolia "unquestionably . . . indigent," but imposed legal financial obligations which included a $200 criminal filing fee. 12 VRP at 11.

Nuusolia appeals his convictions and sentence.

## ANALYSIS

### I. SUFFICIENCY OF THE EVIDENCE

Nuusolia argues that the evidence presented to the trial court was insufficient for a rational jury to find that the State proved all of the elements of second degree assault beyond a

reasonable doubt, namely the specific intent element. We hold that sufficient evidence was presented to the trial court for a rational jury to conclude that all of the elements of second degree assault were proven beyond a reasonable doubt.

Evidence is sufficient to support a conviction if, after viewing the evidence in the light most favorable to the State, any rational jury could find that all of the elements of the crime charged were proven beyond a reasonable doubt. *State v. Cardenas-Flores*, 189 Wn.2d 243, 265, 401 P.3d 19 (2017). When a defendant challenges the sufficiency of the evidence, he admits the truth of the State's evidence, and all reasonable inferences drawn from that evidence are to be construed in favor of the State. *Cardenas-Flores*, 189 Wn.2d at 265-66. In a sufficiency of the evidence determination, both circumstantial and direct evidence are equally reliable. *Cardenas-Flores*, 189 Wn.2d at 266. We give deference to the trier of fact to resolve conflicting testimony, witness credibility, and the overall persuasiveness of the evidence. *Cardenas-Flores*, 189 Wn.2d at 266. We review sufficiency of the evidence de novo. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016).

A person commits second degree assault if he intentionally assaults another and as a result inflicts substantial bodily harm on the other person. RCW 9A.36.021(1)(a). In Washington, there are three definitions of assault: (1) an unlawful touching, (2) an attempt to inflict bodily injury on another, and (3) an attempt to put another in apprehension of harm. *State v. Elmi*, 166 Wn.2d 209, 215, 207 P.3d 439 (2009). The second and third definitions of assault require specific intent, either an individual specifically intends to inflict bodily injury on another, or an individual specifically intends to put another in apprehension of harm. *State v. Byrd*, 125

Wn.2d 707, 713, 887 P.2d 396 (1995).  Specific intent is satisfied when an individual acts with the intention of producing a specific result.  *Elmi*, 166 Wn.2d at 215.

Here, the State presented sufficient evidence for a rational trier of fact to find that all of the elements of second degree assault were proven beyond a reasonable doubt.  Because the State did not allege assault by battery, the State was required to prove that either Nuusolia specifically intended to inflict bodily injury on Eseneiaso, or that Nuusolia specifically intended to put Eseneiaso in apprehension of harm.

At trial, multiple witnesses testified that Nuusolia was attempting to run over Eseneiaso by continuing to ram into the construction barriers.  Additional witnesses testified to the anger and frustration Nuusolia exhibited during and after the incident.  Other witnesses testified that during the incident Eseneiaso was running, crying, and pleading for help.  As a result, a rational jury relying on this testimony could conclude that either Nuusolia specifically intended to inflict bodily injury on Eseneiaso or Nuusolia specifically intended to put Eseneiaso in apprehension of harm.  Thus, there was sufficient evidence to support the jury's finding of guilty for second degree assault.

Nuusolia cites *State v. Baker*, 136 Wn. App. 878, 882, 151 P.3d 237 (2007), to argue that Nuusolia's conduct was insufficient for a rational trier of fact to infer the specific intent necessary to convict Nuusolia of second degree assault.  But *Baker* is unavailing.

In *Baker* the police officers engaged in a high speed chase of the defendant.  The officers tried various maneuvers to stop the defendant's vehicle which were unsuccessful.  *Baker*, 136 Wn. App. at 881.  The defendant rammed his vehicle into an officer's car and another officer's motorcycle.  *Baker*, 136 Wn. App. at 881.  The court held that the defendant committed assault

by battery when he intentionally hit the officers' vehicles. *Baker*, 136 Wn. App. at 882. Here, the issue is not assault by battery, but rather whether specific intent assaults were committed. Thus, Nuusolia's argument fails because he can be convicted of second degree assault even if he did not commit assault by battery.

Further, Nuusolia contends that he did not purposefully hit the construction barriers for the following reasons: doing so would cause damage to his vehicle, it was broad daylight, and both Eseneiaso and Nuusolia testified at trial that Nuusolia did not intend to run over Eseneiaso with the vehicle. But we view the evidence in the light most favorable to the State, and based on the testimony of the other witnesses, a rational jury could nevertheless conclude that Nuusolia had the specific intent required for a conviction of second degree assault.

## II. CRIMINAL FILING FEE

Nuusolia argues that the criminal filing fee should be stricken from the judgment and sentence because the trial court did not impose the fee and the legal financial obligation statutes do not authorize its imposition on indigent defendants. The State concedes that the criminal filing fee should be stricken from the judgment and sentence because Nuusolia was indigent at sentencing.

Courts cannot impose a criminal filing fee on indigent defendants. RCW 36.18.020(2)(h).

Here, it is uncontested that Nuusolia was indigent, but the trial court nevertheless imposed a criminal filing fee. We accept the concession of the State and remand this case to the trial court to strike the criminal filing fee in the judgment and sentence. We affirm Nuusolia's convictions.

No. 53023-6-II

A majority of the panel having determined that his opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, J.

We concur:

Maxa, C.J.

Lee, J.

9