# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 54348-6-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| DAVID EDWARD SMALLEY, | |
| Appellant. | |

MAXA, P.J. – David Smalley appeals his convictions for second degree assault, possession of a controlled substance (methamphetamine), and witness tampering as well as the imposition of community custody supervision fees as a legal financial obligation (LFO). The convictions arose from an incident in which Smalley stabbed an acquaintance, and then in telephone calls from jail attempted to have a third person convince the victim to sign a statement that the stabbing was accidental.

We hold that (1) sufficient evidence supports Smalley's witness tampering conviction, (2) the amended information provided sufficient notice of the unlawful possession of a controlled substance and assault charges, and (3) the record is unclear whether the trial court intended to impose community custody supervision costs as determined by the Department of Corrections (DOC). Accordingly, we affirm Smalley's convictions, but we remand to the trial court to consider whether to impose supervision costs.

FACTS

*Incident and Investigation*

Smalley and Chambers were acquaintances. On March 5, 2019, Chambers visited Smalley in Smalley's garage with others present. Smalley gave Chambers money and methamphetamine. Smalley then made a statement to which Chambers took offense. Chambers responded with a rude comment.

Embarrassed by Chambers' comment, Smalley approached Chambers and stabbed him in the abdomen with a knife. The stab wound penetrated all three layers of Chambers' abdominal wall and potentially was life-threatening. Chambers underwent exploratory surgery to ensure that there was no internal damage, and the wound was repaired.

Officer Noah Dier from the Lakewood Police Department investigated the incident and spoke with Chambers about his injury. On two separate occasions, Chambers told him that he had been stabbed by a person named Tony. After Chambers underwent surgery, Dier spoke to him a third time about the incident. On this occasion, Chambers told Dier that Smalley had stabbed him at Smalley's residence.

Lakewood Police obtained a search warrant for Smalley's residence. Officers executed the search warrant and arrested Smalley. In a search of Smalley incident to arrest, officers found a bag of methamphetamine in Smalley's jacket.

*Telephone Calls from Jail*

While in jail, Smalley made several telephone calls to a friend, McKenna Melton. Sergeant Sean Conlon listened to the calls and they also were recorded. In these calls, Smalley attempted to have Melton contact Chambers for the purpose of having Chambers write and sign a statement that the stabbing was an accident.

*Charging Information*

The State filed an amended information charging Smalley with first degree assault, witness tampering, and unlawful possession of a controlled substance (methamphetamine). Smalley did not object to the information.

*Bench Trial*

Smalley waived a jury trial and was tried by the court. At trial, Chambers acknowledged that he gave three different statements to law enforcement as to the circumstances of his stabbing. Chambers stated that he intended to return to Smalley's home to exact revenge himself, so he initially withheld the truth in an attempt to throw law enforcement off. Chambers testified that he had a change of heart and decided to identify Smalley after undergoing surgery. Chambers then told Dier that Smalley had stabbed him.

Chambers testified at trial that Smalley stabbed him intentionally. In addition, Chambers testified that he never told anyone that the stabbing was an accident. The trial court found Chambers' testimony credible.

During Conlon's testimony, the State introduced an audio recording and written transcript of phone calls Smalley made from jail to Melton. Conlon testified that, throughout the course of these phone calls, Smalley attempted to get Melton to locate Chambers and get him to sign an agreement that the stabbing was an accident.

At the end of the trial, the trial court gave an oral ruling finding Smalley guilty of second degree assault as an inferior degree offense to the charge of first degree assault, possession of a controlled substance (methamphetamine), and witness tampering. The trial court later entered detailed findings of fact and conclusions of law supporting the guilty verdicts. The findings incorporated the exhibits admitted into evidence, and the court's oral ruling.

The trial court made express findings of fact that Smalley intentionally assaulted Chambers with a deadly weapon. The court also made conclusions of law that the assault was intentional. In addition, the court made a finding that Smalley's calls to McKenna constituted an attempt to induce Chambers to testify falsely. And the court made a conclusion of law that Smalley attempted to induce Chambers to testify falsely.

At sentencing, the court found Smalley indigent and imposed a mandatory $500 crime victim penalty assessment and restitution in an amount to be determined at a future restitution hearing. When discussing the imposition of LFOs, the court stated, "$500 crime victim penalty assessment, *and that is it*." Report of Proceedings (RP) at 491 (emphasis added). In its oral ruling, the court did not specifically order Smalley to pay supervision fees. Neither party mentioned supervision fees.

In the judgment and sentence, the court crossed out the DNA database fee, court-appointed attorney fees and defense costs, and the criminal filing fee, writing "Waived by Court." Clerk's Papers (CP) at 33. The judgment and sentence stated that total LFOs were $500. The court also imposed community custody conditions. The court did not strike a boilerplate provision stating that while on community custody, Smalley shall "pay supervision fees as determined by DOC." CP at 35.

Smalley appeals his convictions and the imposition of the supervision fees as an LFO.

ANALYSIS

A.    SUFFICIENCY OF THE EVIDENCE

Smalley argues that the evidence was insufficient to prove that he committed witness tampering. Specifically, he claims that the State proved only that he had attempted to induce Chambers to testify, not that he attempted to induce Chambers to testify *falsely*. We disagree.

1.    Standard of Review

The test for determining sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Cardenas-Flores*, 189 Wn.2d 243, 265, 401 P.3d 19 (2017). In a sufficiency of the evidence claim, the defendant admits the truth of the evidence and the court views the evidence and all reasonable inferences drawn from that evidence in the light most favorable to the State. *Id*. at 265-66. Credibility determinations are made by the trier of fact and are not subject to review. *Id*. at 266. Circumstantial and direct evidence are equally reliable. *Id*.

We treat unchallenged findings of fact as verities on appeal. *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014). Here, Smalley assigned error to only one finding of fact – that he attempted to induce Chambers to testify falsely. Therefore, the court's other findings are verities.

2.    Witness Tampering

RCW 9A.72.120(1)(a) states that a person is guilty of witness tampering "if he or she attempts to induce a witness or person he or she has reason to believe is about to be called as a witness . . . to: (a) [t]estify falsely." In assessing whether the defendant tampered with a witness, the trier of fact can consider both "the literal meaning of the words used" and "the inferential meaning of the words and the context in which they were used." *State v. Rempel*, 114 Wn.2d 77, 83-84, 785 P.2d 1134 (1990).

3.    Analysis

Smalley concedes that he was trying to induce Chambers to testify. The question is whether there was sufficient evidence to prove that he asked Chambers to testify *falsely*.

Smalley argues that under RCW 9A.72.120(1)(a), the State must prove that the defendant knew that the witness did not believe the testimony that the defendant was trying to induce. In other words, a defendant must know that the witness would be lying if he or she provided the requested testimony. According to Smalley, the fact that the testimony ultimately turns out to be false should not matter. Otherwise, a defendant's right to present a defense would be thwarted. A defendant must be allowed to contact witnesses to see if they will agree to provide testimony that will support the defendant's version of the facts.

Relying on this interpretation of the law, Smalley argues that there is no evidence that he knew that Chambers did not believe that the stabbing was accidental and that saying that it was accidental would be false. Smalley claims that he merely wanted Chambers to sign a statement confirming what he allegedly had told others: that the stabbing was an accident. He asserts that he had no reason to know that Chambers believed the stabbing was intentional. And Smalley thought that the stabbing was an accident. Therefore, Smalley was asking Chambers to truthfully state what both he and Chambers believed to be true. Smalley contends that neither his literal words nor their inferential meaning suggested otherwise.

Even assuming Smalley's legal interpretation of RCW 9A.72.120(1)(a) is correct, we reject Smalley's argument for three reasons. First, Smalley's argument depends on his testimony that Melton informed him that Chambers had told others that the stabbing was accidental. However, Chambers testified that Smalley intentionally stabbed him. And Chambers expressly testified that he never told anyone that the stabbing was an accident. The trial court found that Chambers was a credible witness. The court was free to credit Chambers' testimony on this issue and disregard Smalley's testimony. This court does not review the factfinder's credibility determinations. *Cardenas-Flores*, 189 Wn.2d at 266.

6

Second, there is evidence in the transcripts of the telephone calls from which the court could infer that Smalley knew that Chambers believed that the stabbing was intentional. Referring to Chambers, Smalley stated, "He lied twice. . . . You know, he covered (inaudible) good for me." Ex. 3 at 33. In commenting on Chambers' multiple statements to law enforcement, Smalley stated that Chambers' lies initially had "gained a cover for me" because they indicated that someone else had been responsible for the stabbing. Ex. 3 at 33. Then Smalley stated, "You know, I did it." Ex. 3 at 33.

Third, the trial court made unchallenged findings of fact that Smalley intentionally stabbed Chambers. Those findings are verities on appeal. *Homan*, 181 Wn.2d at 106. Therefore, the court could infer that Smalley knew that the stabbing was not an accident and that he was attempting to induce Chambers to testify falsely to a fact that Smalley knew was false.

We conclude that sufficient evidence supports Smalley's witness tampering conviction. Accordingly, we affirm that conviction.

B.    SUFFICIENCY OF INFORMATION

Smalley argues that the information provided insufficient notice of (1) the unlawful possession of controlled substance charge because it omitted the element of knowledge, and (2) the assault charge because it omitted an "unlawful force" element. We disagree.

1.    Legal Principles

Under the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution, "[a]ccused persons have the constitutional right to know the charges against them." *State v. Pry*, 194 Wn.2d 745, 751, 452 P.3d 536 (2019). The State gives notice of criminal charges in an information, which "shall be a plain, concise and definite written

statement of the essential facts constituting the offense charged." CrR 2.1(a)(1); *see State v. Porter*, 186 Wn.2d 85, 89, 375 P.3d 664 (2016).

To be constitutionally sufficient, an information must state "every essential statutory and nonstatutory element of the crime." *Pry*, 194 Wn.2d at 751. An essential element is one that must be specified to establish the illegality of the charged behavior. *Id.* at 752. If the information fails to allege every essential element, it is insufficient and the charge must be dismissed without prejudice. *Porter*, 186 Wn.2d at 89-90.

However, the information is not required to provide definitions of essential elements. *Pry*, 194 Wn.2d at 752. Definitions of terms within an essential element are not themselves essential elements. *State v. Johnson*, 180 Wn.2d 295, 302, 325 P.3d 135 (2014).

When the defendant challenges the sufficiency of the information for the first time on appeal, as here, this court liberally construes the document in favor of its validity. *Pry*, 194 Wn.2d at 752. This court determines based on a liberal reading whether the information in some manner contains all the essential elements. *Id.*

We review de novo allegations of constitutional violations, such as the insufficiency of an information. *See Johnson*, 180 Wn.2d at 300.

2. Unlawful Possession of a Controlled Substance

Smalley argues that an essential element of possession of a controlled substance is that the defendant knowingly possessed the substance. He contends that the amended information was insufficient because it did not allege that he knowingly possessed methamphetamine. We disagree.

RCW 69.50.4013(1) states, "It is unlawful for any person to possess a controlled substance." In *State v. Bradshaw*, the Supreme Court confirmed that the unlawful possession

8

statute does not have a mens rea element. 152 Wn.2d 528, 532-34, 98 P.3d 1190 (2004). And

the court refused to imply such an element. *Id.* at 535-37. *Bradshaw* remains good law.

Smalley notes that the Supreme Court has granted review on this issue in *State v. Blake*,

194 Wn.2d 1023, 456 P.3d 395 (2020). And he argues that if the Supreme Court were to

overrule *Bradshaw* during the pendency of this appeal, that holding would apply to this case.

However, the court has not yet issued an opinion in *Blake*. Therefore, we remain bound by

*Bradshaw*. *State v. Jussila*, 197 Wn. App. 908, 931, 392 P.3d 1108 (2017).

We reject Smalley's argument that the information was insufficient with respect to the

unlawful possession of a controlled substance charge.

3.    Assault

Smalley argues that an essential element of first degree assault is that the assault was

carried out with "unlawful force." He contends that the amended information was insufficient

because it did not allege this element. We disagree.

The State charged Smalley with first degree assault under RCW 9A.36.011(1)(a)[1], which

means assaulting another "with intent to inflict great bodily harm . . . with a firearm or any

deadly weapon or by any force or means likely to produce great bodily harm or death."

One of the essential elements of first degree assault is an "assault." *State v. Elmi*, 166

Wn.2d 209, 215, 207 P.3d 439 (2009). Because the criminal code does not define the term

"assault," courts apply the common law definition. *Id*. Three definitions of assault are

recognized: "(1) an unlawful touching (actual battery); (2) an attempt with unlawful force to

---

[1] RCW 9A.36.011has been amended since the events of this case transpired. Because these amendments do not impact the statutory language relied on by this court, we refer to the current statute.

inflict bodily injury upon another, tending but failing to accomplish it (attempted battery); and (3) putting another in apprehension of harm." *Id*. at 215.

Smalley claims that regardless of degree, an assault requires the use of unlawful force, citing *State v. Prado*, 144 Wn. App. 227, 181 P.3d 901 (2008). But *Prado* involved the adequacy of a jury instruction defining assault, not the sufficiency of an information. *Id.* at 245-47. The court noted that the pattern jury instruction on the definition of assault included "unlawful force" as a bracketed phrase. *Id.* at 246; *see* 11 WASHINGTON PRACTICE: PATTERN JURY INSTRUCTIONS: CRIMINAL § 35.50 (4th ed. 2016) (WPIC).[2]

However, the court noted that the bracketed phrase may only be appropriate if there is evidence of self-defense or other lawful force. *Prado*, 144 Wn. App. at 246-47. The Note on Use for WPIC 35.50 states, "Include the phrase 'with unlawful force' if there is a claim of self-defense or other lawful use of force." *Prado* was a self-defense case. 144 Wn. App. at 247; *see also State v. Brooks*, 142 Wn. App. 842, 846-47, 176 P.3d 549 (2008) (holding that inclusion of the term "unlawful force" in a second degree assault instruction was not required because the defendant did not claim self-defense).

In any event, whether unlawful force must be included in a jury instruction is a much different issue than whether that term must be included in an information. The fact that unlawful force may be part of the definition of assault under certain circumstances does not make unlawful force an essential element. As noted above, the information is not required to provide definitions of essential elements because definitions are not themselves essential elements. *Pry*, 194 Wn.2d at 752; *Johnson*, 180 Wn.2d at 302.

---

[2] Prado cited to the version of WPIC 35.50 in the 2005 second edition supplement. *Prado*, 144 Wn. App. at 246.

Further, the Supreme Court has stated in an alternative means case that the common law definitions of assault do not constitute essential elements of the offense. *State v. Smith*, 159 Wn.2d 778, 788, 154 P.3d 873 (2007). Rather, they merely define an element of the crime charged: the element of assault. *Id.* at 787.

We reject Smalley's argument that the information was insufficient with respect to the first degree assault charge.

C.      IMPOSITION OF COMMUNITY CUSTODY SUPERVISION FEES

Smalley argues that the trial court erred in failing to waive the condition of community custody requiring him to pay supervision fees after finding him indigent. We conclude that the record is unclear whether the trial court intended to impose supervision costs.

"Unless waived by the court, as part of any term of community custody, the court shall order an offender to: . . . [p]ay supervision fees as determined by [DOC]." RCW 9.94A.703(2)(d). Because they are waivable by the court, supervision fees are discretionary LFOs. *State v. Spaulding*, 15 Wn. App. 2d 526, 536, 476 P.3d 205 (2020). But a discretionary supervision fee is not a "cost" as defined in RCW 10.01.160(2), and therefore the prohibition in RCW 10.01.160(3) of imposing "costs" on an indigent person is inapplicable. *Spaulding*, 15 Wn. App. 2d at 536-37. Therefore, the trial court had authority to impose supervision fees as an LFO even though Smalley was indigent.

However, it is unclear whether the trial court intended to impose supervision fees. The court waived all the discretionary fees in the LFO section of the judgment and sentence. And in discussing the imposition of LFOs, the court stated that it would impose the "$500 crime victim penalty assessment, *and that is it*." RP at 491 (emphasis added). This comments suggests that the court did not intend to impose supervision fees.

11

On the other hand, the supervision fees provision was in a separate part of the judgment and sentence dealing with community custody. Even though the court waived other discretionary LFOs, it is possible that the court intended to impose supervision fees as a condition of community custody.

Because it is unclear whether the trial court intended to impose supervision fees, we remand for the trial court to consider in its discretion whether to impose supervision fees.

CONCLUSION

We affirm Smalley's convictions, but we remand to the trial court to consider whether to impose supervision fees.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, J.


 I concur:

_____
GLASGOW, J

CRUSER, J. (dissenting in part) – I respectfully dissent from the majority's decision to remand this case for the trial court to reconsider its imposition of community custody supervision fees. I would decline to consider this issue pursuant to RAP 2.5(a)(3).

This case is one of numerous cases in which we have been asked, in the face of an unambiguous notation on the judgment and sentence imposing community supervision fees, to parse the trial court's oral remarks at sentencing and conclude that the trial court did not mean to impose such fees. The genesis of this problem is that the supervision fees are located in a different portion of the judgment and sentence than the remainder of the legal financial obligations (LFOs). In Smalley's judgment and sentence, the community custody supervision fee is found in paragraph 4.6, while the remaining LFOs are found in paragraph 4.1. The assumption we are asked to make is that the trial court did not see the supervision fee provision before signing the judgment and sentence and, thus, imposed a fee it did not intend to impose.

In some cases this assumption is well taken, such as when a sentencing court specifically indicates an intention not to impose any non-mandatory "*fees*." Here, the court said "$500 crime victim penalty assessment, and that is it." Verbatim Report of Proceedings at 491. But, as noted above, the victim assessment provision is located in paragraph 4.1 of the judgment and sentence, along with all of the other LFOs except the community custody supervision fees. It is reasonable to conclude that when the judge said "that is it," he was reviewing paragraph 4.1 and indicating his intention not to impose any of the other LFOs contained in that paragraph.

Moreover, the community custody supervision fees are qualitatively different than other legal financial obligations. Fees and costs such as court appointed attorney fees and filing fees are intended to recoup expenses that accrued during the course of the prosecution. Community custody

supervision fees, in contrast, are prospective fees intended to cover expenses related to the execution of the defendant's sentence.

The majority concludes that the trial court intended not to impose any other LFOs and simply overlooked the community custody supervision fees plainly written into paragraph 4.6. This conundrum highlights the importance of raising objections to LFOs to the *sentencing court*. This process wherein we are asked, at the appellate level, to look at the trial court's oral remarks at sentencing and guess at the court's intent is what RAP 2.5 is intended to prevent. Although we have the discretion to consider this issue for the first time on appeal, there is no legitimate reason why, nearly six years after our supreme court decided *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015), and more than two years after the decision in *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018), defense attorneys continually fail to raise objections to the imposition of LFOs at sentencing.[3] One might reasonably conclude that the inclination of appellate courts to do on appeal what defense attorneys are duty bound to do at sentencing is encouraging this dereliction.

I would decline to consider this issue for the first time on appeal. The sentencing court's oral remarks are not part of the final judgment unless reduced to a written order, here the judgment and sentence. *State v. Huckins*, 5 Wn. App. 2d 457, 426 P.3d 797 (2018) (citing *State v. Dailey*, 93 Wn.2d 454, 458, 610 P.2d 357 (1980)). I do not dispute that there are cases in which the sentencing court plainly intended to waive community custody supervision fees and failed to reduce that intent to writing. In this case, I am not confident that is what occurred. For that reason, I would decline to consider this issue under RAP 2.5(a)(3).

Cruser, J.
CRUSER, J.

---

[3] Similarly, it would be helpful if the court, if it truly intends not to impose community supervision fees, would cross that provision out on the judgment and sentence.